Argued August 24, affirmed October 12, petition for rehearing
denied November 15, 1972, petition for review
denied January 23, 1973

STATE ex rel JUVENILE DEPARTMENT OF
MARION COUNTY, *Respondent, v.*
SHERMAN TROY JOHNSON,
*Appellant.*
501 P2d 1011

*David A. Rhoten,* Salem, argued the cause and filed the briefs for appellant.

*Gary D. Gortmaker,* District Attorney, Salem, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

Petitions were filed in the juvenile court division of the Marion County Circuit Court alleging the commission by Sherman Johnson, a 17-year-old boy, of the crimes of burglary and felony murder committed in the course thereof. Petitioner requested and the court held a remand hearing. At its conclusion the court ordered that the boy be remanded to the adult criminal court for all further proceedings on the matters alleged in the petitions. The boy appeals.

He contends that a remand hearing should be considered to be "in the nature of an adjudicatory proceeding" and thus governed by the rules applicable thereto. The rule in Oregon is to the contrary. ORS 419.533; *Bouge v. Reed,* 254 Or 418, 459 P2d 896

(1969) ; *State v. Little*, 241 Or 557, 407 P2d 627 (1965) ; *State v. Weidner*, 6 Or App 317, 484 P2d 844, 487 P2d 1385 (1971).[1] The purpose of such hearing is not to determine whether the child has, or even whether there is probable cause to believe the child has, committed the unlawful acts alleged in the particular petition, but whether or not "retaining jurisdiction will not serve the best interests of the child and the public." ORS 419.533 (1) (c).

The order of remand included the following:

"3. The above named child is alleged to have

---

[1] *See also:* In re Winship, 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970). There, after holding that proof beyond a reasonable doubt is necessary in the adjudicatory phase of a juvenile court proceeding involving acts which if committed by an adult would constitute a violation of law, the court said:

"* * * And the opportunity during the post-adjudicatory or dispositional hearing for a wide-ranging review of the child's social history and for his individualized treatment will remain unimpaired. Similarly, there will be no effect on the procedures distinctive to juvenile proceedings that are employed prior to the adjudicatory hearing." (397 US at 366-67),

thus indicating that proof beyond a reasonable doubt is not required in a dispositional hearing. See, however, Kent v. United States, 383 US 541, 86 S Ct 1045, 16 L Ed 2d 84 (1966), a waiver case, where the court said:

"* * * In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the District Court was potentially as important to petitioner as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel.

"* * * * *

"* * * 'The need is even greater in the adjudication of waiver (than in a case like *Shioutakon*) since it contemplates the imposition of criminal sanctions.' * * *" 383 US at 557-58.

committed criminal offenses, to wit: Murder and Burglary in the First Degree;

"4. If in fact the said child did commit the crimes alleged that:

"(a) Treatment required for his rehabilitation is such that it is going to require an extended period in a containment situation; and

"(b) Resources for juvenile offenders of his age for his particular needs do not exist in the State of Oregon; and

"(c) Therefore, I find that retaining jurisdiction of this child by the Juvenile Court will not best serve the interest of the child and the general public;

"* * * * * *."

■ Appellant contends it was error to base the ruling on the absence of resources in Oregon to meet the child's needs. We disagree. The art of judging is not exercised in a vacuum. Rehabilitation is the end result of a process which requires among many things trained personnel and physical resources designed and operated to that end. A court in all juvenile dispositional matters not only may, but must, give careful consideration to availability of such resources.

The uncontradicted evidence in the case showed that this boy, now past 18 years, had been subjected to the processes of the juvenile court for many years. He was a ward of the juvenile court for Josephine County[®] at the time the acts alleged in these petitions were committed, and had by it been previously committed to MacLaren School for Boys. He had been paroled at different times to home placements both with his father and his mother. Both had failed, and

---

[®] That court duly entered its order transferring the hearing and disposition of the matters here involved to the Marion County Juvenile Court pursuant to ORS 419.545 and 419.547.

he had been brought back to MacLaren. His history there and on community placement status indicated a continuing pattern of running away from any placement situation, institutional or otherwise, and also a pattern of commission of further unlawful acts. At the time of the commission of the acts here charged he was on a work placement from MacLaren to Fairview Home from which he ran away to become almost immediately involved in the further criminal activity here alleged.

The psychologist and the psychiatrist who examined the boy and testified at the hearing both concluded he required a containment situation for a prolonged period of time which offered a substantial vocational training program. Both agreed that the sole security facility available at MacLaren was not suitable for the boy's needs, nor was its vocational program adequate for this boy.

■ We think it clear that the court had the right and indeed the duty to give careful consideration to the nature, type and program of juvenile facilities available for this boy. Its conclusion that no adequate facility was available in this state is fully supported by the record.

While the boy was first in custody in Grants Pass where he was initially apprehended following the burglary and murder alleged in the petitions, he gave a tape-recorded statement to the police. Throughout these proceedings his counsel diligently by motion prior to hearing and again during the hearing sought the production of this recording and its consideration by the court. No claim is made of any violation of the boy's *Miranda*® rights.

---

® Miranda v. Arizona, **384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966)**.

The state contended that since this hearing was not related to determining whether or not Johnson had committed the acts charged in the petitions, evidence relating to those matters was not admissible. The court sustained this position and refused to compel the production of the tape or of the statement derived therefrom. This ruling is assigned as error.

■ ■ A remand hearing is a dispositional hearing concerning the matters alleged in the petition pursuant to which that proceeding is invoked. ORS 419.533. An order of remand is a final order of the juvenile court. As such it is an appealable order. ORS 419.561. *State v. Little,* supra; *State v. Briggs,* 245 Or 503, 420 P2d 71 (1966).

ORS 419.500(2) provides:

"For the purpose of determining proper disposition of the child, testimony, reports or other material relating to the child's mental, physical and social history and prognosis may be received by the court without regard to their competency or relevancy under the rules of evidence."

In criminal cases the law provides:

"Upon motion of a defendant, at any time after the filing of the indictment or information, and upon a showing that the items sought are material to the preparation of his defense and that the request is reasonable, the court may order the district attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant, including written statements or confessions made by the defendant. The order shall specify the time, place and manner of making the inspection and of taking copies or photographs and may prescribe such terms and conditions as are just." ORS 133.755(1).

Construing that statute and *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and cases subsequent thereto, our Supreme Court in *State ex rel Dooley v. Connall,* 257 Or 94, 102, 475 P2d 582 (1970), said:

"We conclude that with the exception of written statements of prosecution witnesses which must be made available to the defense at the time of cross examination *(State v. Foster, supra)*, the exculpatory evidence, at the request of the defense, must be disclosed by the prosecution at such time as will allow the defendant to use it effectively in his own defense. In the event that the prosecution and the defense cannot agree as to the time, the trial court has the inherent power and the duty to decide the time of disclosure."

■ The state correctly urges that a juvenile remand hearing is not a criminal proceeding, but is civil in nature *(State v. Weidner,* supra), and thus that the rule of *State ex rel Dooley v. Connall,* supra, has no application. This is not to say, however, that its reasoning is not persuasive here, for it does relate to fair treatment.

■■ The question of admissibility of evidence in a remand hearing is essentially one of relevance to the issue to be decided. We think a statement made by the boy shortly after he was taken into custody is relevant, not to establish whether or not he committed the acts alleged, though certainly it may have a tendency to do so, but to aid those qualified as experts to express an opinion concerning the ultimate question before the court—the determination of what is in the best interest of the child and of the public. For the same reason it has value to the court in making its determination.④

---

④ His state of mind at such a time can be relevant to such matters as remorse, motivation, truthfulness and comprehension.

We think the social worker, the psychologist and the psychiatrist had as much right in forming their opinions to consider what the boy may have said to others concerning the matters alleged following his arrest, as to consider what the boy may have told to each of them at the time each interviewed him.

In *Kent v. United States*, 383 US 541, 86 S Ct 1045, 16 L Ed 2d 84 (1966), the court in discussing the standards appropriate to remand hearings said:

"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment. [Citation omitted.]" 383 US at 562.

We think that consonant with concepts of fair treatment the court should have made the boy's statement available here in advance of trial to counsel. Thus it might have been considered both by the court and the experts together with all other relevant evidence in deciding what disposition was in the best interest of the child and the public.

The question remains, however, whether the ruling was prejudicial. During the hearing, Sherman Johnson, called as a witness in his own behalf, testified:

"Q [Direct examination by Mr. Rhoten]: Now Sherman, while you have been here, you have had occasion to be visited by Dr. Norman [sic] Lowery; do you remember that?
"A Yes.

"Q Did he visit you on a couple of occasions?
"A Yes.

"Q Have you taken tests and things?
"A Yes.

"Q You have also had occasion to meet and visit with Dr. James Hogg [sic]; do you remember that?

"A Yes.

"Q Did he ask you questions and things?

"A Yes.

"Q In your visiting with both Dr. Lowery and Dr. Hogg [sic], were you able to tell them—did you tell them that you had given a statement on a tape in Grants Pass?

"A No.

"Q Did you tell them, however, your version of what your understanding of the facts were as far as the Turner incident is concerned?

"A Yes.

"Q And they asked you about it in detail, did they?

"A Yes."

Thus it is obvious that both the psychologist and psychiatrist in fact did know in detail from the boy what he claimed transpired on the occasion of the crimes alleged in the petition. No claim is made that the statement given in Grants Pass differed in any material particular from the ones given to Dr. Lowery and Dr. Hogue.

He also testified that he had previously run away from MacLaren on six occasions. It was uncontradicted that on the occasion of his present involvment he was again running away. Both Dr. Hogue and Dr. Lowery testified that MacLaren School did not offer the type of remedial program required by Johnson. Dr. Hogue testified there was none in Oregon.

In *Mikulovsky v. State,* 54 Wis 2d 699, 196 NW2d 748 (1972), the Wisconsin Supreme Court considered

a similar problem where a 17-year-old boy had been remanded on a charge of murder. The court said:

"Finally, defendant argues that at the time of the hearing on the petition, the district attorney was under a duty to disclose to the court and to defense counsel the recorded confession of John. However, it appears that defense counsel was fully aware of the confession and its contents prior to the hearing, as evidenced by references thereto in the various affidavits submitted to the trial court. * * * The instant case does not approach the situation where the state fails to disclose or suppress material evidence in violation of defendant's right of due process. [Citations omitted.]" 196 NW2d at 760.

■ A juvenile court "exercises jurisdiction as a court of general and equitable jurisdiction." ORS 419.474 (1). An appeal from its order "shall be conducted in the same manner as an appeal in an equity suit." ORS 419.561 (4). Our review, therefore, is de novo. *Prindel v. Collins,* 4 Or App 618, 482 P2d 540 (1971).

■ We have, accordingly, reviewed the evidence, including those portions of Johnson's tape-recorded statement made at Grants Pass which by stipulation of counsel have been made a part of the record on appeal and appear as an appendix to appellant's brief. We, too, conclude therefrom beyond a reasonable doubt that it is in the best interests of the child and the state that he be remanded on these petitions to the adult court.

Affirmed.