Argued February 21, affirmed April 1, petition for reconsideration
denied May 8, petition for review denied May 21, 1974

IN THE MATTER OF DAVID WEBB SLACK, A CHILD.

# STATE EX REL JUVENILE DEPARTMENT OF WASHINGTON COUNTY, *Respondent, v.* SLACK (No. 8211), *Appellant.*

520 P2d 905

*Richard A. Van Hoomissen,* Portland, argued the cause for appellant. With him on the brief were George J. Cooper, III, and Morrison, Bailey, Dunn, Cohen & Miller, Portland.

*Scott McAlister,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor- General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

SCHWAB, C. J.

This is an appeal from an order of the juvenile court remanding David Slack to adult court. Appellant makes two contentions on appeal. (I) The remand order did not state with sufficient specificity the reasons forming the basis for the court's conclusion that Slack should be remanded. (II) The state did not meet its burden of proof that the best interests of the juvenile and of society would be served by remand.

## I

The order of remand stated in pertinent part:

"* * * The best interest of society can best be served and the rehabilitation of * * * Slack can best be accomplished in a non-juvenile court setting."

The appellant correctly states:

"A comparison of the above language with ORS 419.533 (1) shows clearly that the Juvenile Court merely copied the provisions of the remand statute without adding a single substantive statement of reason which was based upon evidence received * * *."

He then goes on to argue that the order does not comply with the due process requirement in *Kent v. United States,* 383 US 541, 86 S Ct 1045, 16 L Ed 2d 84 (1966). He bases his conclusion on the following statement from *Kent:*

> "Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review." 383 US at 561,

and also on our statement in *State v. Weidner,* 6 Or App 317, 325, 484 P2d 844, 487 P2d 1385 (1971), in which we said by way of *dicta:*

> "The next consideration is defendant's claim that the remand order did not comply with the remand statute nor with the requirements of *Kent v. United States,* supra. *Kent v. United States* is interpreted to require the entry of specific findings of fact which will support its decision to remand a child to adult court. Oregon State Bar, Oregon Juvenile Law Handbook, Remand § 4.9 (1970). The remand statute itself provides that the court must make a finding not only that the child is above 16 years of age and is alleged to have committed a

criminal offense, but also that 'retaining jurisdiction will not serve the best interests of the child and the public.' In the present case the court did not comply either with *Kent* or with the remand statute in this regard."

■ For the reasons which follow we hold that *Kent,* in so far as it deals with "findings of fact," has no application under the Oregon statutory scheme, and that any implication to the contrary in *State v. Weidner,* supra, should be disregarded. ORS 419.533 (1) provides:

"(1) A child may be remanded to a circuit, district, justice or municipal court of competent jurisdiction for disposition as an adult if:

"(a) The child is at the time of the remand 16 years of age or older; and

"(b) The child committed or is alleged to have committed a criminal offense or a violation of a municipal ordinance; and

"(c) The juvenile court determines that retaining jurisdiction will not serve the best interests of the child and the public."

This statute sets out the criteria for determining whether a juvenile should be remanded. It does not require written findings to be incorporated in an order.

As we noted in another remand case, *State ex rel Juv. Dept. v. Johnson,* 11 Or App 313, 323, 501 P2d 1011 (1972), Sup Ct *review denied* (1973):

"A juvenile court 'exercises jurisdiction as a court of general and equitable jurisdiction.' ORS 419.474 (1). An appeal from its order 'shall be conducted in the same manner as an appeal in an equity suit.' ORS 419.561 (4). Our review, therefore, is de novo. *Prindel v. Collins,* 4 Or App 618, 482 P2d 540 (1971)."

In *Hannan v. Good Samaritan Hosp.*, 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971), we reviewed in considerable detail the distinction between de novo review and appellate review for error, and concluded:

"Our review of the opinions of the Oregon Supreme Court applying that statute [ORS 19.125 (3)[1]] leads us to the conclusion that in Oregon a de novo review is a trial anew in the fullest sense, with the findings of the trial court, subject to one exception, being given no weight. This exception has been enunciated in terms of giving 'great weight' to the tribunal (usually the trial judge) who had the opportunity to see and hear the witnesses and thus be better able to weigh their credibility on disputed issues of fact. In *Claude v. Claude,* 180 Or 62, 79, 174 P2d 179 (1946), the court said:

" 'On disputed questions of fact it is the rule in this court to give weight to the findings of the trial judge in a suit in equity and not lightly to set them aside. We are not, however, bound by such findings, and, where the evidence is conflicting, we have a duty to examine the record with care for the purpose of determining the truth.'

In *Liggett v. Lester,* 237 Or 52, 57, 390 P2d 351 (1964), the court said:

" '* * * We have examined the record independently, as we are required to do in all equity cases * * *.'

In *Roberts v. Mariner,* 195 Or 311, 348, 245 P2d 927 (1952), the court said:

" '* * * We recognize the often-announced rule that, in equity proceedings, this court will give great weight to the findings of the trial court upon disputed questions of fact, but, as

---

[1] "Upon an appeal from a decree in a suit in equity, the cause shall be tried anew upon the record." ORS 19.125 (3).

we have also often said, such findings are not binding upon us, *and the rule itself is one of expediency only.* We have a responsibility in every case such as this to make our own independent study of the record and to arrive at our own conclusions respecting it.' (Emphasis supplied.)" 4 Or App at 187-88.

As noted in *State v. Weidner,* supra, the main thrust of *Kent* was that constitutional due process requires that a juvenile not be remanded to adult court without a hearing. Here we have before us a complete record of a full hearing. That portion of *Kent* dealing with specific findings was addressing itself to the situation then existing in the District of Columbia, the jurisdiction from which the case arose. At that time there was no District of Columbia statute governing review of remand orders, let alone a provision for de novo review by an appellate court. Findings of fact are frequently helpful and their use is encouraged. Nonetheless, not everything that may be desirable is therefore constitutionally required. If we assume that a remand hearing under ORS 419.533 (1) is a "civil proceeding" as that phrase is used in ORS 17.431 (2),[2] then by timely request a party can statutorily require the juvenile judge to make findings of fact. That issue is not before us in the case at bar.

## II

■ Turning to the merits, our review of the record leads us to the conclusion that the trial judge was

---

[2] "(1) Whenever any party appearing in a civil proceeding tried by the court, whether at law, in equity or otherwise, so demands prior to the commencement of the trial, the court shall make special findings of fact, and shall state separately its conclusions of law thereon.

"(2) In the absence of such a demand for special findings, the court may make either general or special findings." ORS 17.431.

correct in remanding Slack to adult court. These proceedings were instituted on a petition which stated that Slack, at the age of 17 years and 8 months, participated in an armed robbery. Although he had no previous official juvenile record there is evidence of previous deviant behavior which had been dealt with unofficially. A prior formal juvenile record is not a condition precedent to remand. *State ex rel Juv. Dept. v. Sage,* 15 Or App 444, 515 P2d 956 (1973). Suffice it to say that the record discloses a young man of considerable intelligence with the ability to verbalize his responsibilities to society but not actually to accept them. We agree with the trial judge that the services available within the juvenile system for the rehabilitation of an 18-year-old with Slack's background are not as likely to be beneficial to him or society in the long run as those services available in the adult system.

Affirmed.

FORT, J., dissenting.

The first question presented on this appeal, in my opinion, is whether or not the court made findings of fact sufficient to support its order of remand. The majority concludes that it did.

Unlike the findings approved in *State ex rel Juv. Dept. v. Johnson,* 11 Or App 313, 501 P2d 1011 (1972), Sup Ct *review denied* (1973), the findings here are set forth only in the ultimate fact language of the statute.

The court holds "that *Kent,*[1] in so far as it deals with 'findings of fact,' has no application under the Oregon statutory scheme" and then goes on to

---

[1] Kent v. United States, 383 US 541, 86 S Ct 1045, 16 L Ed 2d 84 (1966).

disapprove of our prior holding in *State v. Weidner,* 6 Or App 317, 484 P2d 844, 487 P2d 1385 (1971), in so far as it implies to the contrary. I disagree and would adhere to that opinion.

In *State v. Gibbs,* 94 Ida 908, 500 P2d 209 (1972), the Idaho Supreme Court, in a waiver case, discussed the need for specific findings at length:

"Moreover, there is a recognized need for criteria to prevent infringements of due process or equal protection in the application of statutes authorizing waiver to particular cases. Finally, criteria are essential to meaningful appellate review of waiver decisions. In *Kent* the Supreme Court observed:

" 'Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts.'

"Because the propriety of the waiver in *Kent* was not considered on its merits, the Supreme Court did not undertake to define the appropriate criteria. Consequently, the state courts, when the discretionary waiver statutes of their respective jurisdictions are subjected to constitutional challenge, must fashion the controlling criteria.

"From the most significant factors identified by investigations reported in distinguished law reviews, the areas of consensus among juvenile court judges may be discerned. Jurisdiction ordinarily is waived when (1) the defendant has acquired such a degree of emotional or mental maturity that he is not receptive to rehabilitative programs designed for children; (2) although the defendant is immature, his disturbance has eluded exhaustive prior efforts at correction through existing juvenile programs; or (3) the defendant is immature and might be treated, but the nature of his difficulty is

likely to render him dangerous to the public if released at age twenty-one, or to disrupt the rehabilitation of other children in the program prior to his release. These areas of consensus provide flexible but definite criteria for waiver of jurisdiction. Each criterion requires that the child's potential for rehabilitation be evaluated in terms of his present state of development and the availability of facilities, programs and personnel capable of providing effective individualized treatment.

"* * * A valid waiver must be based on a specific finding, supported by substantial and competent evidence obtained in the 'full investigation' required by statute, that the defendant is not amenable to rehabilitative treatment under juvenile court jurisdiction." 500 P2d at 216-18.

The Supreme Court of Montana in *Lujan v. District Court,* 161 Mont 287, 295, 505 P2d 896 (1973), involving the remand of a 17-year, 11-month-old boy to adult court said:

"The real thrust of petitioner's argument is that constitutional due process and fundamental fairness were denied in the instant case by failure of the court to give any reasons for its transfer order, thereby precluding a meaningful appellate review of its exercise of discretion in ordering transfer of the case to adult criminal court. Corollary to this argument is petitioner's contention that the transfer order was based solely on a finding of probable cause without consideration of whether the best interest of the state required such transfer.

"*Kent* clearly requires a statement of reasons for a waiver and transfer order under constitutional 'due process' and 'assistance of counsel' requirements. The purpose of this is to insure careful consideration and the exercise of discretion by the juvenile court in determining whether waiver and transfer should be ordered, together with a

meaningful review by the appellate court of any abuse of discretion by the juvenile court."

The Oregon Juvenile Law Handbook, § 4.9 (1970), cited with approval by this court in *State v. Weidner*, supra, states:

"The court *must* enter specific findings of fact which will support its decision to remand a child to adult court. *Kent v. United States*, supra." (Emphasis supplied.)

Oregon Juvenile Law Handbook, § 4.10 (1970), states:

"Upon concluding that a child should be remanded to adult court and after making specific written findings of fact which will support such an order, a child may be committed to an adult court of competent jurisdiction to stand trial as a criminal * * *."

While our review, of course, is de novo, as the majority points out, I believe that meaningful review on disputed matters of fact, often involving credibility, is more consistent with the retention of the rule in *Weidner*.

My examination of the record here, particularly in the absence of specific findings, leaves me unsatisfied that the juvenile court has, in fact, exhausted the rehabilitative opportunities potentially available to it, and that the decision here to remand is based in large measure on the serious nature of the alleged offense. Certainly that is a reasonable interpretation of the deposition testimony of the social worker assigned by the juvenile department to the boy's case. The sole medical testimony offered was from an associate professor of psychiatry at the University of Oregon Medical School, who had served the state prior to that

position as Chief Clinical Psychologist at one of its mental hospitals, as a clinic director and as a consultant psychologist. He had been in a consulting capacity entailing 10 to 12 sessions with the boy over a period of two months prior to the court hearing, including administration of extensive psychological testing.

He testified:

"Q [By attorney for the boy] Do you think it is critical that counseling be continued?

"A Yes.

"Q And for the best interest of this boy, he not be remanded?

"A And for the State.

"Q You subscribe to that plan that has been received in evidence. You think that is the best outline to make David a useful citizen?

"A Yes, I do."

The state called no medical or psychological witness.

Another witness called by the state was the school principal. The boy's principal problems there, he said, had been smoking in violation of school rules and an occasional unexcused absence.

The principal testified:

"Q [By attorney for the boy] During your discussions with David Slack, what was his general attitude?

"A I would say Dave's attitude was generally cooperative as he discussed the problems. Surely not belligerent or antagonistic. I certainly have seen nothing negative about his attitude in conferences. The thing that particularly concerned me was the inability to solve the problems and thus come back.

"Q He was very open?

"A Yes.

"Q Regarding that, what was his statement about future actions?

"A My recollection is that verbally Dave would indicate that he would solve the problem.

"* * * * *

"Q (By Mr. VanHoomissen) David graduated from high school last Sunday and completed all the required courses?

"A Yes."

Although the boy had had some contact on an informal basis with the juvenile department, he had never been made a ward of the court.

The state in its brief points out:

"Appellant presented many proposals to the juvenile court for consideration as alternatives to remand to adult court. * * *

"The plan had considerable merit. However, the proposal had significant negative aspects which the trial court could consider in deciding that remand would be more appropriate to the circumstances of the case."

The record shows that one alternative proposed by the boy involved the possibility of the boy entering a branch of the armed services. A letter exhibit from that branch stated:

"Subject: Enlistment in U.S.M.C. of David Webb Slack

"1. Subject individual appeared 30 April, 1973, at AFEES and was found qualified for regular enlistment in the Marine Corps subject to the outcome of his pending referral to Washington County Juvenile authorities.

"2. If the above case results in a felony conviction, we cannot enlist the boy. If the matter results

in only a juvenile record, a waiver can be had from the 12th District Office upon certification by our Staff Psychiatrist that the boy is mentally qualified.

"3. Upon entry into the Marines, the boy would be sent immediately to M.C. Recruit Depot, San Diego, California, where he would receive training for an initial period of 12 weeks. Following this, he would likely receive advance training in his assigned specialty. His enlistment period can be three or four years, depending upon the type of occupation he elects."

The boy testified:

"Q [By deputy district attorney] Do you want to go into the Marines?

"A Yes, sure.

"Q Do you think you will enjoy boot camp?

"A I don't think anyone enjoys boot camp. I think it is beneficial to everyone that goes in, to most everyone that goes in."

Another exhibit in the form of a television news story pointed out:

"Weather watching has been Dave Slack's hobby for three years. The 16-year old Beaverton High school student hopes it will become his career. Dave plans to study metorology [sic] at Oregon State University . . . and go to work for the Weather Bureau. He's already helping the Weather Bureau. Dave phones in daily reports on weather conditions in the Raleigh Hills area. He takes readings from instruments at his family's home in Southwest Portland.

"* * * * *

"Dave's interest in the weather began when he became curious about the thunderstorms he watched in Arizona several years ago. From that curiosity, a career has emerged. * * *

"* * * * *"

The Report of the 1957 Legislative Interim Committee on Judicial Administration, Part II, Juvenile Law, which produced the 1959 Revised Juvenile Code, states:

"BASIC CONCEPTS

"The basic concept of the present juvenile law, a concept retained in the proposed code, is that juveniles who have offended against the law or who find themselves in need of protection should be dealt with through a specialized procedure in a court which, when possible, has a judge specialized in dealing with children. The procedure is civil, not criminal, and equitable in that the remedies may be flexible and based upon 'conscience' and judgment, rather than upon more or less rigid rules of law.

"The most important respect in which the juvenile code departs from traditional legal machinery is that a child under 18 who has violated a law is dealt with, not by indictment and trial according to the criminal law, but by petition in a civil proceeding before the juvenile judge. Futhermore, [sic] the object of the proceeding is not reformation through punishment, but reformation through education, either in the child's own home, in an adoptive or foster home or in a private or public agency or training school."

The essence of the system requires an individualized analysis of the needs of each child and dispositions based thereon, ORS 419.507, together, in a remand case, with consideration of the best interests of the public. ORS 419.533 (1)(c).

From the deposition testimony[2] of the juvenile department counselor handling this case, I can only

---

[2] The counselor testified concerning the juvenile department policy as follows:

"* * * The policy in the department has been that any time serious violent offense is committed by anyone over 16

conclude that it was in fact an established policy of the juvenile department and of the district attorney to recommend a remand to adult court in all cases involving a youth nearing 18 who was involved in any serious crime where violence or a serious threat thereof occurred. Such a policy, in my view, is contrary to that mandated by the statute.

ORS 419.474 (2) provides:

"(2) The provisions of ORS 419.472 to 419.587 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance and control, preferably in his own home, as will lead to the child's welfare and the best interests of the public, and that when a child is removed from the control of his parents the court may secure for him care that best meets the needs of the child."

that serious consideration be given to remand, at least the remand hearing be held, especially when it involves a weapon.

"\* \* \* \* \*

"Q So then it is just a matter of departmental policy that if you have a serious crime that you call for a remand?

"A The remand hearing, right.

"\* \* \* \* \*

"Q Okay. So then we have it definitely understood that the Washington County Juvenile Department policy is that whenever you have a serious crime that the department asks for a remand?

"A I think—not being the director of the department, you would have to ask the director that, Mr. Van Hoomissen. I'm telling you what my experience has been.

"\* \* \* \* \*."

And, concerning the policy of the district attorney, he said:

"Well, my feelings has [sic] been that the District Attorney's office—had determined to have this young man remanded.

"Q In this particular case was there any pressure from the D.A.'s office to remand David Webb Slack or was it solely the idea of the Juvenile Department?

"A Again the policy that I was referring to earlier—we have received a lot of pressure in the past on offenses of violent nature where the D.A. has insisted on a remand."

In my view, the department policy, as testified to, is not consistent with the legislative intention. Such a policy, particularly by the juvenile department, cannot help but render suspect every petition for remand filed by the state and serves only to increase the heavy burden necessarily borne by the state in every remand case.

The Supreme Court of Kansas, in *In re Patterson,* 210 Kan 245, 499 P2d 1131, 1136 (1972), considered the waiver to adult court of three boys, ages 16 to 18, for first degree murder. The court stated:

"* * * We cannot escape the conclusion that the district court, like the juvenile court, saw disposition as being dictated by the offense and not the offender. If the seriousness of the offense is the prime consideration, the lack of concern for the individual potential of the boys is understandable—it is simply not relevant to determining what procedure will result in confinement.

"We think, however, that the approach taken below misconceives the thrust of the juvenile code, as set out in K.S.A. 28-801 and reviewed at some length in State, ex rel, v. Owens, supra. Mr. Justice Schroeder succinctly summarized the statutory and case law by saying:

" 'From the foregoing it may be said a juvenile proceeding under Kansas Law is a protective proceeding entirely concerned with the welfare of the child, and is not punitive.' (Id., 197 Kan., at 220, 416 P.2d at 267.)

"Nowhere is it indicated that the nature of the transgression should alter this philosophy.

"Looking at the record from this point of view, we are unable to perceive any substantial evidence from which one could reasonably conclude that these boys are not amenable to the processes of the juvenile court. We are therefore reversing the

district court's order and remanding this case for a re-examination of the question of whether any of the three boys is a fit and proper subject to be dealt with under the juvenile code."

Here it is conceded that substantial viable alternatives to remand were presented to the court. No findings of fact related to their rejection have been made by the court to aid this court in understanding why. This case presents, in my view, an excellent example for the soundness of the rule announced by this court in *Weidner* concerning the requirement "of specific findings of fact which will support its decision to remand a child to adult court."

Thus, I first conclude that the proper disposition of this case is to remand it to the circuit court for the entry of specific findings of fact supporting its conclusion, in the face of this record, to remand the boy. Since, however, the majority opinion renders such a disposition impossible, I rest my dissent on the ground that, from the cold record, the state, in my view, has clearly failed to support its burden of establishing that the order of remand is in the best interests of either the child or of the state, let alone, as the statute (ORS 419.533 (1)(c)) requires, both of them.

For the foregoing reasons, I respectfully dissent.