Argued December 21, 1976, affirmed in part; reversed in part January 31, reconsideration denied March 16, petition for review allowed June 14, 1977

In the Matter of James Dean Cole, a Minor Child
STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY, *Respondent,*
*v.*
COLE, *Appellant.*
(No. 49,600, CA 5849)

STATE OF OREGON, *Appellant,*
*v.*
JAMES DEAN COLE, *Respondent.*
(Nos. C 76-01-01037 and C 76-01-01038,
CA 6040, 6041, 6042 and 6043)
(Cases consolidated)
559 P2d 918

Nely L. Johnson, Portland, argued the cause and filed the brief for appellant.

W. Michael Gillette, Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Argued and submitted December 21, 1976.

W. Michael Gillette, Solicitor General, Salem, argued the cause for appellant. With him on the brief was Lee Johnson, Attorney General, Salem.

Nely L. Johnson, Portland, argued the cause for

respondent. On the brief was Kristena A. LaMar, Portland.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

These consolidated appeals involve the same juvenile. One case arises as an appeal from the adult court to which the juvenile was remanded and the other from the juvenile court order of remand. The adult court dismissed two informations of felony against the remanded juvenile based on the juvenile courts vacating the underlying remand order. The state appeals. The juvenile appeals the original remand order, but in effect, asks this court to uphold dismissal of the adult criminal charges and then declare the appeal of the remand order moot thus retaining him within the jurisdiction of the juvenile court.

The issues raised in this consolidated appeal are: First, whether the juvenile court has power to vacate an order of remand; second, whether lack of statutory findings of fact in a remand order is reversible error; and third, whether remand was proper under the facts of this case.

The juvenile, who at the time of remand was seventeen and one-half years old, was already a ward of the Multnomah County Juvenile Court. In the last three months of 1975 and early 1976, petitions were filed in juvenile court alleging 12 separate acts, which if committed by an adult would constitute felonies. The majority of the acts alleged would be burglaries.

After hearing, the juvenile court entered an order remanding the juvenile to adult court on all 12 charges. Shortly thereafter the court, on motion of the state, entered a "blanket remand" order pursuant to ORS 419.533(4), relinquishing jurisdiction over the juvenile for all future criminal acts. An appeal was filed from the specific remand order.

Following remand the juvenile was arraigned and an attorney appointed for him in district court on two informations of felony arising from the acts for which he was remanded. After preliminary hearing he was

bound over to the circuit court for trial. There he was arraigned and one pretrial conference was held.

After filing notice of appeal from the remand order, the juvenile requested the juvenile court to vacate the remand order and reassume jurisdiction. The juvenile court did, stating as the principal reasons it had erroneously proceeded under the old statute, which had been amended prior to the first remand hearing, and had not properly considered evidence of the ability of the juvenile court system to offer the juvenile further rehabilitative services. The court heard no further evidence but reviewed the evidence presented at the original remand hearing and determined the juvenile court system could offer further rehabilitative services to the juvenile.

The adult court, aware of the impending action of the juvenile court but prior to the actual entry of the order vacating remand, sua sponte released the juvenile from jurisdiction of adult court. The state objected, and following a hearing the court dismissed the informations of felony. The state appeals this order of dismissal. This court granted the juvenile's motion to hold his appeal of the remand order in abeyance until the state had perfected its appeal so both cases could be heard at one time.[1]

In order to determine if the dismissal of the informations of felony in the adult court was proper we must determine the primary issue whether the juvenile court, once having issued an order of remand, may subsequently vacate that order. The juvenile cites

---

[1] We granted the motion for the reasons specified. The notice of appeal was not dismissed. Once the notice of appeal was filed this court had jurisdiction and coincidentally the juvenile court lost jurisdiction to reconsider or vacate the remand order. The juvenile and the juvenile court apparently relied upon our granting of the motion as returning jurisdiction to juvenile court. Based upon that possible reliance we review the action of the court.

ORS 419.533 (4) and (5) as authority to vacate the order:

"(4) After the juvenile court has entered an order remanding a child to an adult court for doing an act which is a violation or which if done by an adult would constititute a violation of a law or ordinance of the United States or a state, county or city, the court may enter a subsequent order providing that in all future cases involving the same child, the child shall be remanded to the appropriate court without further proceedings under subsections (1) and (3) of this section except that a finding under subsection (2) of this section must be reviewed and renewed before the case can be remanded.

"(5) The juvenile court may at any time direct that the subsequent order entered under subsection (4) of this section shall be vacated or that a pending case be remanded to the juvenile court for further proceedings. The court may make such a direction on any case but shall do so and require a pending case to be remanded to the juvenile court if it cannot support the finding required under subsection (2) of this section."

■ When a person otherwise within the exclusive jurisdiction of the juvenile court (ORS 419.476) is remanded, the juvenile court loses jurisdiction except in those instances where, specifically authorized by statute, the court may reassume jurisdiction.

Subsection (5), quoted above, relates, by its terms, to the nonspecific "blanket remand" orders authorized in subsection (4). There is some confusion in the language of subsection (5) by the legislature's use of the term "pending case" which by its literal terms could conceivably refer to all cases pending in adult court which were remanded on specific petitions or by the nonspecific "blanket remand." This position is urged by the juvenile.

The more logical interpretation, induced by the specific reference in subsection (5) to subsection (4) remands, is the legislature intended pending cases to refer to those pending after and as a result of the "blanket remand." To hold otherwise would allow the

juvenile court to direct that any case remanded be returned to its exclusive jurisdiction even though the adult court had assumed jurisdiction by initiating a criminal charge against the remanded juvenile.

The juvenile argues that trial judges should be encouraged to reconsider orders made and to correct erroneous rulings. This may, in retrospect, be commendable in a given situation but there is a predominant policy to foster finality of judicial action in order that courts and litigants may continue in their business and rely on judicial rulings. To follow the juvenile's argument would mean, in this case, the juvenile court could oust the jurisdiction of the adult court and The Court of Appeals. We cannot ascribe to the legislature such an intent from what in that context would be a rather casual reference to "pending case" in ORS 419.533(5).

That the legislature was concerned with this type of problem is evident in ORS 419.561(5) regarding the authority of the juvenile court to make orders affecting a case pending for appeal in this court.[2]

The juvenile also cites ORS 419.529(1) as authority for modification of the remand order.

> "Except as provided in this section, the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct."

It is elementary a court can only act upon matters over which it has jurisdiction. In the instance of a juvenile remand the juvenile court surrenders its exclusive

---

[2] "Unless otherwise ordered by the appellate court, the filing or pendency of an appeal does not suspend the order of the juvenile court nor shall it discharge the child from the custody of the person, institution or agency in whose custody the child may have been placed; nor shall it preclude the trial court after notice and hearing from entering such further temporary order relating to the child's custody pending final disposition of the appeal as it finds necessary by reason only of matters transpiring subsequent to the order appealed from. Certified copies of any such order shall be filed by the clerk of the juvenile court forthwith with the clerk of the Court of Appeals." ORS 419.561(5).

jurisdiction to the adult court and can reassert this jurisdiction only if specifically authorized by statute.

The juvenile court act confers upon the juvenile court the continuing responsibility and hence jurisdiction over the welfare of children. If the court orders a remand, the court loses the responsibility and hence loses jurisdiction.

■■ The juvenile court does not have authority to vacate a specific remand order issued pursuant to ORS 419.533(1) once the order becomes final. The adult court dismissal of the informations of felony was based upon the invalid action of the juvenile court. The dismissal order is reversed.

Since we hold the remand was not vacated and the criminal charges were improperly dismissed the juvenile's appeal of the remand order must be determined.

The state concedes the juvenile court remand order did not comply with ORS 419.533(2):

"The juvenile court shall make a specific, detailed, written finding of fact to support any determination under paragraph (c) of subsection (1) of this section." (Retaining jurisdiction will not serve the best interests of the child because the child is not amenable to rehabilitation facilities or programs available to the juvenile court.)

■■ Appeals from the juvenile court are reviewed de novo. ORS 419.561(4); *State ex rel Juv. Dept. v. Slack,* 17 Or App 57, 520 P2d 905, Sup Ct *review denied* (1974); *Prindel v. Collins,* 4 Or App 618, 482 P2d 540 (1971). De novo review is a trial anew in the fullest sense, with the findings of the trial court given no weight except on matters of credibility where the trial judge had an opportunity to view the witnesses. *State ex rel Juv. Dept. v. Slack, supra; Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971).

Our Supreme Court in discussing de novo review said:

> "* * * We recognize the often-announced rule that, in equity proceedings, this court will give great weight to the findings of the trial court upon disputed questions of fact, but, as we have also often said, such findings are not binding upon us, and the rule itself is one of expediency only. We have a responsibility in every case such as this to make our own independent study of the record and to arrive at our own conclusions respecting it." *Roberts v. Mariner,* 195 Or 311, 348, 245 P2d 927 (1952).

In the context of de novo review the findings of a trial court, though helpful, are not binding. We review the record and not the finding. The lack of statutorily required findings may be addressed in a different fashion but it does not effect the requirements of our review and is not reversible error. Neither are the findings constitutionally required. *State ex rel Juv. Dept. v. Slack, supra.*

Although the order contained no written findings of fact the trial judge's oral statement given on the record at the close of the hearing reveals her thinking and response to the evidence received.[3]

> "* * * you are, in fact, one of these classic kinds of cases that should have been helped a long time ago but you are seventeen and a half now and there is nothing that this Juvenile Court system can do for you anymore. * * * I am satisfied that there is reasonable probability that you are involved in all of the burglaries that this Detective testified to. That charge is not before me, but what is before me is whether or not the system can help you and it is too late. * * * But neither this Judge nor any other judge can see to it that MacLaren will hold you until you are twenty-one because you know how to work this system and we're not going to help you. * * * "

We agree with this assessment of the juvenile court's ability to offer further help to the juvenile. He

---

[3] We do not pass upon the question whether the oral statements of the trial judge which appear in the transcript would constitute sufficient findings under ORS 419.533(2).

originally entered the juvenile court system as a ward of the court in the spring of 1973. Following that he had numerous contacts relating to criminal activities, truancy and being out of control of his parents. He was placed in a summer job training program where he performed adequately although he had several absences due to his staying out late or all night from his home. His parents appear to have no control over his activities or behavior. He is limited educationally and was diagnosed intellectually as mildly retarded and immature, although able to function at a higher level in school. Education and vocational rehabilitation plans developed for him have been largely unsuccessful. He has not responded to probation and as a result was placed in MacLaren School for Boys following allegations of his involvement in thefts from coin operated machines.

In the latter part of 1975, he was arrested on a burglary charge. In response to questioning, after arrest, he admitted involvement in 50 burglaries between February, 1974, and December, 1975; 34 of these committed before being placed in MacLaren and 16 after his release.

From the record, the inference is inescapable, that the juvenile is an accomplished thief. The second inference is the juvenile has had the benefit of all that the juvenile court rehabilitative system can offer to him. We take cognizance that he is now eighteen and a half years old. He entered the system at a comparatively late age and while the system might have several opportunities to work with most younger juveniles and to adjust treatment to their individual needs, the late entry of this juvenile has given the system scant opportunity to design and accomplish a successful plan. Placing him in the adult criminal justice system does not mean all treatment and rehabilitative services will cease.

The evidence indicates the juvenile is able to manipulate the system and the goals set for him so he

can regain his freedom as soon as possible. Out of the structured living of detention he is undisciplined and soon is involved in criminal activity.

The juvenile counselor who worked closely with the juvenile said his prognosis for the future was poor and that he needed to be in some structured institutional setting. Due to his age, the number of contacts he has had with the juvenile court system, the unsuccessful treatment and schooling programs and that when released he becomes involved in criminal activity, we agree prognosis for successful rehabilitation within the juvenile system is poor.

In summary, we find the original remand was proper and affirm that order; we find the dismissal of the informations of felony by the adult court was error and reverse that judgment.

Affirmed as to No. 49,600, CA 5849.

Reversed as to Nos. C 76-01-01037 and C 76-01-01038, CA 6040, 6041, 6042 and 6043.