Argued April 16, affirmed May 6, 1974

IN THE MATTER OF RAYMOND ELMER RAINWATER, A CHILD.

STATE EX REL JUVENILE DEPARTMENT OF LINCOLN COUNTY, *Respondent, v.* RAINWATER ET AL (No. J-1246), *Appellants.*

521 P2d 1095

*Stephen A. Lovejoy,* Lincoln City, argued the cause for appellants. With him on the brief were DeSelms and Lovejoy, Lincoln City, and MacPherson and Carstens, Newport.

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

FORT, J.

This matter comes before the court on appeal from the order of the juvenile court, after hearing, remanding this boy to adult court on a charge of burglary in the second degree. ORS 164.215.

The record indicates that this youth, now 17½, has a long history of involvement with juvenile authorities which resulted from a long series of offenses, each of which, if committed by an adult, would have constituted a crime — principally burglaries. The first such offense was committed by him in December 1970 at the age of barely 14 years. He was made a ward of the juvenile court as a result in March 1971.

During the course of approximately the next two and one-half years, he remained a ward of the juvenile court thereafter until the remand order here challenged.

He received court placements progressively, first in a foster home, then to the Children's Services Division for placement in Hawthorne Manor, a residential center, then to the Children's Farm Home, a long established treatment center for disturbed youth, and, finally, to MacLaren School, the state training school for boys. He ran away once and was later paroled after seven months. While he was on parole, he became involved, about the time he reached age 17, in a series

of eight additional burglaries, all of commercial establishments. In short, none of the placements, including attempts at home, proved effective.

In addition, the record establishes that he was involved in at least five additional burglaries prior to his commitment to the Children's Farm Home in March 1972, and in September 1972, prior to his commitment to MacLaren in October 1972, he was involved in at least one additional burglary. With few exceptions, his law violations have all involved burglaries of business establishments.

The evidence offered at the hearing consisted of reports from a psychiatrist, two psychologists and the testimony of the boy's parole officer at MacLaren. Neither the boy nor his parents testified though all were present, with counsel, at the hearing.

It was stipulated that the boy had, following his parole from MacLaren, been involved, as stated above, in some eight burglaries on six separate occasions.

The trial court concluded that the child's history clearly showed a well established, longtime pattern of serious criminal offenses, and that, without success, he had been exposed at length to the full rehabilitative resources available to the juvenile court for delinquent boys. Relying upon the standards laid down in *State v. Weidner*, 6 Or App 317, 484 P2d 844, 487 P2d 1385 (1971), it concluded that the best interests of both the state and the child warranted his remand to adult court. We agree. Neither the mere hope expressed by the parole officer that recommitment to MacLaren for further, long-term treatment might at last effect his rehabilitation, nor one psychologist's concern that confinement in an adult penal institution might reinforce

his clearly established, long-term pattern of serious criminal offenses is sufficient for us to conclude that the trial court was in error in concluding that the boy should be remanded.

Affirmed.