570 P.2d 365 (1977)
280 Or. 173
In the matter of James Dean Cole, a Minor Child.
State ex rel. Juvenile Department of Multnomah County, Respondent,
v.
JAMES DEAN COLE, Petitioner.
State of Oregon, Respondent,
v.
James Dean Cole, Petitioner.
Supreme Court of Oregon, In Banc.
Argued and Submitted September 8, 1977.
Decided October 25, 1977.
*366 Nely L. Johnson, Portland, argued the cause for petitioner. With her on the briefs was Kristena A. LaMar, Portland.
Thomas H. Denney, Asst. Atty. Gen., Salem, argued the cause for respondent. On the briefs were Lee Johnson, Atty. Gen., and W. Michael Gillette, Sol. Gen., Salem.
HOLMAN, Justice.
Two related cases have been consolidated for purposes of this appeal. The first is an appeal by James Dean Cole, a juvenile, from orders of the Juvenile Court of Multnomah County transferring twelve charges against him to the criminal court for disposition as if he were an adult. The second is an appeal by the District Attorney of Multnomah County from the dismissals of criminal informations filed by him against Cole subsequent to the transfers to criminal court.
The genesis of these cases was a procedural nightmare. Cole had been a ward of the juvenile court since 1973, and had previously been institutionalized in MacLaren School. In late 1975 and early 1976 twelve separate charges, primarily burglary, were filed against him in juvenile court. The District Attorney moved that the charges be transferred to adult court for disposition. After a hearing upon the motion, the juvenile court so transferred the charges on January 14, 1976, without making any written findings of fact as required by ORS 419.533(2). On January 23, 1976, informations against Cole were filed by the District Attorney in criminal court. On February 9, 1976, Cole filed a notice of appeal from the transfer orders of the juvenile court.
After filing his notice of appeal, Cole successfully sought to have the juvenile court judge change her mind. She did so by an order of February 27, 1976, which purported to set aside the transfer orders. In the meantime Cole had been arraigned upon the informations in criminal court, had received a preliminary hearing and was bound over for trial, and one pre-trial conference had been held. On February 23, 1976, four days prior to the juvenile court judge's order purporting to set aside the transfer orders, the circuit judge hearing criminal matters dismissed the criminal proceedings. It is not clear why he did this, but it would appear that he anticipated the juvenile court judge's subsequent change of mind. The state appeals from the dismissals of the criminal proceedings.
The Court of Appeals affirmed the transfers of the charges against Cole for criminal disposition and reversed the dismissals of the criminal cases against him in circuit court. 28 Or. App. 367, 559 P.2d 918 (1977). This court granted review.
*367 This court granted review for two purposes: One, to determine whether the juvenile court judge's transfer orders were invalidated because of her failure to make written findings of fact pursuant to ORS 419.533(2) showing that the retention of jurisdiction by the juvenile court "will not serve the best interests of the child because the child is not amenable to rehabilitation in facilities and programs available to the court"; and two, to determine generally whether the juvenile court has authority to revoke transfers of charges to the criminal court.
We find that we are frustrated in our latter aim because the juvenile court judge had no jurisdiction to deal further with the transfers after the appeal from her orders of transfer was taken by Cole on February 9, 1976.[1]State v. Jackson, 228 Or. 371, 365 P.2d 294, 89 A.L.R.2d 1225 (1961). The Court of Appeals noted but ignored the juvenile court judge's lack of jurisdiction, and its opinion purported to decide the propriety of her actions as if she had had jurisdiction. No approval or disapproval by this court of the Court of Appeals' proposed solution should be assumed by our reluctance to deal with a hypothetical legal problem.
We will now consider the problem which is available to us for decision, i.e., were the juvenile court's orders transferring the charges against Cole to the criminal court for disposition invalid because the juvenile court judge failed to make written findings of fact as required by ORS 419.533(2)? The language of the subsection is as follows:
"The juvenile court shall make a specific, detailed, written finding of fact to support any determination under paragraph (c) of subsection (1) of this section."
Paragraph (c) of subsection (1) is as follows:
"The juvenile court determines that retaining jurisdiction will not serve the best interests of the child because the child is not amenable to rehabilitation in facilities or programs available to the court."
The purpose of the statutory requirement is obvious. The legislature wanted to make sure, when juvenile court judges transfer charges against juveniles to the criminal court for disposition, that the judges actually consider the criteria which the legislature has laid down for such transfer. In this case, the juvenile court judge stated as follows at the completion of the hearing on transfer:
"I agree with everything your father is saying and I'm certainly in complete agreement with every counselor who has talked in the courtroom as well as whatever it was Mr. Woodside was trying to bring out from the witnesses that you are, in fact, one of these classic kinds of cases that should have been helped a long time ago but you are seventeen and a half now and there is nothing that this Juvenile Court system can do for you anymore. If you had just breached the curfew and just not gone to work, I would not remand you because this case was back last April, but from what I have heard from Detective Goodale  I'm not saying that you have done these things  but I am satisfied that there is reasonable probability that you are involved in all of the burglaries that this Detective testified to. That charge is not before me, but what is before me is whether or not the system can help you and it is too late. I wish to God you were fourteen or fifteen and I would say in no way is it too late. But neither this Judge nor any other judge can see to it that MacLaren will hold you until you are twenty-one because you know how to work this system and we're not going to help you. Because you'll just go there, keep your nose clean, obey the rules and be right back out on the streets again and you'll just end up in the penitentiary anyhow. I hope to God somebody is going to help you in the adult court because we should have done it  we, Society should have done it since you were a little kid."
*368 It is apparent from the above excerpt that the juvenile judge did exactly that which the legislature was intending to require of her by the passage of the statute requiring written findings. It would be a victory of form over substance if we were to invalidate the judge's orders because she made no written findings of fact as required by the statute, when the purpose of the statute in requiring such findings was to cause her to go through the exact mental process that she went through. It is true that she subsequently changed her mind, but, by that time, she had lost jurisdiction because of Cole's filing his notice of appeal from her orders of transfer.
The Court of Appeals reached the same conclusion but upon a basis which we consider to be wrong. Its conclusion was based upon ORS 419.561(4), which provides that appeals from the juvenile court are heard de novo. The Court of Appeals felt that because a de novo hearing was available, any possible error of the trial judge in failing to consider the statutory criteria would be rectified. In our opinion this is an inadequate reason for not requiring written findings by the juvenile court judge.
No appellate judge is in as good a position to make an analysis of a problem of this nature as is the juvenile court judge, who actually listens to the testimony and observes the people involved and who, in most instances, has had a long experience with the juvenile, which experience may or may not be adequately reflected by the printed record. Appellate courts are aware of this; therefore, in close cases they are reluctant to overrule a juvenile court judge's decision, even upon de novo review. This does not mean that juvenile court judges do not make errors of judgment which can and should be rectified by a de novo appeal, but it does demonstrate that the legislative intent is not necessarily fulfilled merely because a de novo review is available. In addition, the rationale of the Court of Appeals is an unhealthy one because under it there is no need for a juvenile court judge ever to make findings of any kind. If there is no appeal, the judge's decision is upheld regardless of whether the statutory criteria were considered; if there is an appeal, the defect of lack of findings is cured by the Court of Appeals' consideration.[2]
Because the juvenile court judge was without jurisdiction to revoke her orders of transfer, the judge of the criminal court had no basis for his dismissal of the criminal charges.
The dispositions of the Court of Appeals are affirmed.
NOTES
[1] The juvenile court does continue to have jurisdiction for some other purposes. See ORS 419.561(5).
[2] Because court reporter records can be lost, destroyed or displaced, it is a good practice either to transcribe the judge's findings from the bench and to file them in the record or to make actual and separate written findings signed by the judge.