*[1221]
 
 SCHWAB, C. J.
 

 The issue presented by this appeal is whether the juvenile court’s remand of a 16-year-old male to adult criminal court was proper. We agree with the reasoning of the juvenile court judge and hence uphold the order of remand. The facts are undisputed.
 

 The juvenile involved in this case was first referred to the juvenile court system in Oregon when he was eight years old, after some minor vandalism. The juvenile was again referred to juvenile court in 1972, after he ran away from home twice. He was referred to juvenile court in 1973 for being beyond parental control and in 1974 on a charge of burglary. In 1975, the juvenile was referred to juvenile court several times after he ran away from home and made unauthorized use of a motor vehicle.
 

 In April 1976, the juvenile moved to Seattle, Washington, with his natural father and stepmother. While in Washington, he once took his father’s automobile and did over $4,000 worth of damage to it. As a result of this incident, the juvenile was cited for reckless driving, driving without an operator’s license and failure to leave his name at the scene of an accident. The juvenile also once shot some bullets into the wall of his parents’ home while in Seattle.
 

 The juvenile returned to Oregon in November 1976 to live with his adoptive father and natural mother. Approximately two days after his sixteenth birthday in March 1977, the juvenile and his brother went to a party. He and his brother were almost ready to leave the party when a "biker,” who was six feet four inches in height and weighed 275 pounds, asked the juvenile to arm wrestle him. Later, the "biker” hit the juvenile and began to beat his brother. The juvenile became frightened when his brother could not get up immediately after the beating. He ran home, grabbed a rifle, ran back to the party and killed the "biker” by firing the rifle through the window of the house where the party was being held.
 

 
 *[1222]
 
 The juvenile was then placed in Washington Comity Juvenile Detention pending a juvenile court hearing. Before the hearing, he escaped once from the detention center. The juvenile was charged in juvenile court with murder and escape. The state filed a petition with the court requesting that the juvenile be remanded to adult criminal court.
 

 At the remand hearing, the General Superintendent of MacLaren and Hillcrest Schools testified for the state. He noted that the average age of the children who enter the MacLaren School for Boys is 16. The superintendent stated that between 1963 and 1977 the school had handled approximately 36 juveniles involved in homicides. He stated that he could recall no case in which a homicide was involved in which the school had requested that the juvenile court terminate its jurisdiction prior to a juvenile’s twenty-first birthday. He did concede, however, that many juveniles who had not committed homicides were released at age 18. The superintendent also noted that in all but two percent of the cases the school handled, the juveniles were sufficiently rehabilitated to return to society without further supervision at age 21. However, he also stressed that it was difficult to predict, at the time a juvenile entered MacLaren, exactly when he would respond to treatment and hence be released. He concluded by stating that the school’s poorest rehabilitative results are with juveniles who are in constant flight and who are constantly breaking attachments to people, places and activities.
 

 A state-appointed psychologist who had examined the juvenile next testified. Psychological tests administered by him indicated that the juvenile was a suspicious and paranoid person who lacked guilt about what he had done because he did not feel loved. The psychologist recommended that the juvenile be remanded to the adult criminal court system but be placed under the care of the juvenile system. He reached this conclusion because he believed that it
 
 *[1223]
 
 would take "some time” to deal with all of the juvenile’s problems. The psychologist stated that since the juvenile system could supervise the juvenile only until age 21, continued correctional supervision over the child could be assured past age 21 only by placing him in the adult corrections system. We note that the psychologist concluded his testimony by noting that he believed it was probable the juvenile would be rehabilitated by age 21.
 

 The juvenile’s current Washington County Juvenile Department counselor was the last person to testify at the remand hearing. She stated that the juvenile is immature and lacks impulse control and apparently acts without thinking about the consequences of his actions. The counselor stated that she believed the juvenile should be placed in Oregon State Hospital where a special adolescent treatment center was in operation. She concluded her testimony by stating that she had no "concrete opinion” as to whether the juvenile should be placed in the adult corrections system or the juvenile court system.
 

 The juvenile court judge ordered that the juvenile be remanded to adult criminal court. In so doing, he made the following written findings of fact:
 

 "a. The above child is 16 years of age with a date of birth of March 18, 1961.
 

 "b. The above child has had. several referrals to the Juvenile Department, including being made a ward of the Court and being placed on formal probation.
 

 "c. The above criminal offense is obviously a serious offense which involved the use of a deadly weapon in a homicide.
 

 "d. The criminal case has prosecutive merit which [sic] a Grand Jury would be likely to return an indictment against the above juvenile.
 

 "e. The above juvenile, because of emotional, psychological or other behaviorial problems, is likely to require Court supervision beyond his 21st birthday when Juvenile Court involvement must cease by law.
 

 "f. The above juvenile is emotionally immature for his
 

 
 *[1224]
 
 Appeals from the juvenile court are reviewed de novo. ORS 419.561(4);
 
 State ex rel Juv. Dept. v. Slack,
 
 17 Or App 57, 520 P2d 905,
 
 rev den
 
 (1974), with the findings of the juvenile court given no weight except on matters of credibility of witnesses.
 
 [1]
 

 State ex rel Juv. Dept. v. Cole,
 
 28 Or App 367, 373, 559 P2d 918,
 
 aff’d
 
 280 Or 173, 570 P2d 365 (1977).
 

 ORS 419.476(l)(a) provides:
 

 "The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:
 

 "(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation of a law or ordinance of the United States or a state, county or city * *
 

 ORS 419.533(1) sets forth the factors which a juvenile court must consider in determining whether to remand a juvenile to adult criminal court:
 

 "A child may be remanded to a circuit, district, justice or municipal court of competent jurisdiction for disposition as an adult if:
 

 "(a) The child is at the time of the remand 16 years of age or older;
 

 "(b) The child committed or is alleged to have committed a criminal offense or a violation of a municipal ordinance; and
 

 "(c) The juvenile court determines that retaining jurisdiction will not serve the best interests of the child because the child is not amenable to rehabilitation in facilities or programs available to the court.”
 

 If a juvenile court decides to retain custody over a juvenile, it may place the juvenile in the legal custody of the Children’s Services Division for care, placement and supervision. ORS 419.507(2). A juvenile placed in the legal custody of the Children’s Services Division must be placed in a juvenile training school if the juvenile is between 12 and 18 years of age, ORS 420.011(1), and
 

 
 *[1225]
 
 "(a) The child is found to be within the jurisdiction of the juvenile court by reason of the ground set forth in [ORS 419.476(l)(a)]; and
 

 "(b) The juvenile court having jurisdiction so orders.” ORS 419.509(l)(a) and (b).
 

 A juvenile who is a student at a juvenile training school may be either voluntarily or involuntarily committed to an institution for the mentally ill (e.g., Oregon State Hospital) under the statutory procedures set forth in ORS 420.500 to 420.515.
 

 If a juvenile is remanded to adult criminal court and subsequently convicted and sentenced to a prison term, ORS 137.124 delegates the decision as to where the juvenile will be confined to the Corrections Division:
 

 "(1) If the court imposes a sentence of imprisonment upon conviction of a felony, it shall not designate the correctional facility in which the defendant is to be confined but shall commit the defendant to the legal and physical custody of the Corrections Division.
 

 "(2) After assuming custody of the convicted person the Corrections Division may transfer inmates from one correctional facility to another such facility * * * as best seems to fit the needs of the inmate and for the protection and welfare of the community and the inmate. * »
 

 When the Corrections Division determines that a male convicted of a crime should not be imprisoned in the Oregon State Penitentiary, ORS 421.705 and 421.710 give the division the authority to imprison the male in the Oregon State Correctional Institution:
 

 "The Oregon State Correctional Institution in Marion County is to be maintained for the confinement, discipline, education, rehabilitation and reformation of such male persons as are committed to its custody or transferred to it under ORS 179.473.” ORS 421.705.
 

 "(1) The principal objectives of the Oregon State Correctional Institution are to provide for the discipline, correction and rehabilitation of male persons convicted of a crime who, because of their experience in crime or
 
 *[1226]
 
 delinquency, are not eligible for commitment to or would be serious disciplinary or security risks at the MacLaren School for Boys but who are considered amenable to rehabilitation and do not require a sentence imposing a punishment of imprisonment in the Oregon State Penitentiary.
 

 "(2) Primary emphasis shall be placed upon the rehabilitation of persons committed to the institution. Restoration to useful citizenship shall be the principal aim of the institution.
 

 "* * * * *.” ORS 421.710.
 

 The Corrections Division also has the authority to temporarily assign persons in its custody under the age of 21 to a juvenile training school under ORS 420.011(2):
 

 "In addition to the persons placed in the legal custody of the Children’s Services Division under ORS 419.507, and with the concurrence of the administrator or designee, persons under the age of 21 years who are committed to the custody of the Corrections Division under ORS 137.124 may be temporarily assigned to a juvenile training school by the Corrections Division. A person assigned on such a temporary basis would remain within the legal custody of the Corrections Division under ORS 137.124 and such assignment shall be subject to termination by the Children’s Services Division administrator by referring such youths back to the Corrections Division.”
 

 The Corrections Division may also transfer persons in its custody to an institution for the mentally ill as provided for in ORS 179.473:
 

 "(1) Whenever the welfare of the person transferred and the efficient administration of the institutions require the transfer, subject to ORS 179.476, 420.500, 420.505 and 420.515:
 

 "(a) Any division, with the consent of the Mental Health Division, may make a transfer of a person at any institution under its jurisdiction to an institution for the mentally ill or mentally deficient, or, with the consent of the school, to the University of Oregon Health Sciences Center.
 

 
 *[1227]
 
 "(b) Except as provided in subsection (2) of this section, a division may make a transfer of a person from any institution under the jurisdiction of that division to any other institution under the jurisdiction of that same division.
 

 "(2) A student of a juvenile training school may not be transferred to the Oregon State Penitentiary, Oregon State Correctional Institution or Oregon Women’s Correctional Center under subsection (1) of this section. A student of a juvenile training school who has been transferred to another institution may not be transferred from such other institution to the Oregon State Penitentiary, Oregon State Correctional Institution or Oregon Women’s Correctional Center.”
 

 Viewing all of the above statutes in totality, it is clear that either the Corrections Division or the Children’s Services Division has the legal authority to place a juvenile in its legal custody in an institution for the mentally ill such as Oregon State Hospital. The juvenile involved in this case could be placed into the special adolescent treatment center recommended by his counselor through adult criminal court or juvenile court system. Thus, we need not consider the type of treatment that will be available to the juvenile in making our remand decision here because, regardless of what court system he enters, the treatment he receives can be identical until he reaches the age of 21.
 

 In many of our past decisions, we have looked to the age of the juvenile remanded. The closer a juvenile is to the age of 18, the less reluctant we are to affirm a remand to the adult criminal court system. Generally, remands involving juveniles aged 17 have been upheld by this court.
 
 See State ex rel Juv. Dept. v. McGrew,
 
 31 Or App 373, 570 P2d 422 (1977);
 
 State ex rel Juv. Dept. v. T,
 
 28 Or App 741, 560 P2d 1104 (1977);
 
 State ex rel Juv. Dept. v. Cole,
 
 28 Or App 367, 559 P2d 918,
 
 aff’d
 
 280 Or 173, 570 P2d 365 (1977);
 
 State ex rel Juv. Dept. v. Kirkham,
 
 25 Or App 113, 548 P2d 517 (1976);
 
 State ex rel Juv. Dept. v. Slack,
 
 17 Or App 57, 520 P2d 905,
 
 rev den
 
 (1974);
 
 State ex rel Juv. Dept. v. Johnson,
 
 11 Or
 
 *[1228]
 
 App 313, 501 P2d 1011,
 
 rev den
 
 (1972). Where we found a 16-year-old male to be physically as well as emotionally immature for his age, we reversed a remand of the juvenile to adult criminal court.
 
 See State ex rel Juv. Dept. v. Cardiel,
 
 18 Or App 49, 523 P2d 1057 (1974).
 

 Next, we have considered whether the child has had previous contact with the juvenile system and whether such contact has been helpful in rehabilitating the child. Where we find that a child has been involved with the juvenile system in the past and either has not been rehabilitated or is presently manipulating the juvenile system to accomplish his own goals, we usually uphold a remand to the adult court.
 
 See State ex rel Juv. Dept. v. Cole, supra; State ex rel Juv. Dept. v. Kirkham, supra; State ex rel Juv. Dept. v. Johnson, supra; State ex rel Juv. Dept. v. Rainwater,
 
 17 Or App 344, 521 P2d 1095 (1974). Obviously, the fact that a child has been exposed to the rehabilitative efforts of the juvenile system with limited success militates against continuing to refer him to a system which is incapable of dealing with his problems.
 

 Third, we have examined the length of time that a child will be exposed to the juvenile system in order to determine whether the juvenile system can rehabilitate him before he is discharged at age 21. Where the evidence indicates that a child will need supervision beyond the age of 21 or the child will only be exposed to the juvenile system for a short period of time due to his proximity to age 21, we have upheld the propriety of a remand of the child to adult court.
 
 See State ex rel Juv. Dept. v. McGrew,
 
 31 Or App 373, 570 P2d 422 (1977);
 
 State ex rel Juv. Dept. v. Cole, supra; State ex rel Juv. Dept. v. Lerma,
 
 29 Or App 713, 564 P2d 1100, 30 Or App 127, 566 P2d 207,
 
 rev den
 
 (1977);
 
 State ex rel Juv. Dept. v. Johnson, supra; State ex rel Juv. Dept. v. Mathis,
 
 21 Or App 740, 537 P2d 148,
 
 rev den
 
 (1975).
 

 Finally, we have looked to the number and severity of the acts of a criminal nature that the child has
 
 *[1229]
 
 committed in the past. The greater the number and the more severe the past acts, the greater the likelihood that we will uphold a remand.
 
 See State ex rel Juv. Dept. v. Surby,
 
 29 Or App 709, 564 P2d 1099 (1977);
 
 State ex rel Juv. Dept. v.
 
 Cole,
 
 supra; State ex rel Juv. Dept. v. Wagner,
 
 16 Or App 504, 519 P2d 400,
 
 rev den
 
 (1974);
 
 State ex rel Juv. Dept. v. Young,
 
 13 Or App 510, 510 P2d 358,
 
 rev den
 
 (1973). Where acts of violence (assaults and homicides) are committed by a juvenile, we have tended to examine the behavior in order to determine if it was done impulsively or reflects a general pattern of juvenile violence. An impulsive act may not require a remand,
 
 see State ex rel Juv. Dept. v. Cardiel, supra,
 
 while a planned assault generally will support a remand.
 
 See State ex rel Juv. Dept. v. Olivier,
 
 22 Or App 491, 539 P2d 1121 (1975);
 
 State ex rel Juv. Dept. v. Mathis, supra.
 

 Applying these factors to the case before us leads to the conclusion that the remand here should be upheld. Although the juvenile involved is only 16 years old, he has had past contacts with the juvenile system which have produced little or no positive results. He has a long history of previous serious offenses. The act he is presently charged with would be, if committed by an adult, murder. Unlike the violent conduct involved in
 
 State ex rel Juv. Dept. v. Cardiel, supra
 
 at 51, where the juvenile immediately and impulsively stabbed an individual fighting with his brother, the juvenile in this case was deliberate enough to go to his home, obtain a rifle and return to the scene of the fight in order to shoot his victim. This action reflects a general pattern of juvenile violence, a fact militating in favor of a remand.
 

 The evidence also indicates that the juvenile will require treatment past the age of 21 — treatment only the adult corrections system can provide. Although the state-appointed psychologist who supported a remand of the juvenile to adult criminal court testified that it
 
 *[1230]
 
 was quite probable that the juvenile would be rehabilitated by age 21, we agree more with the superintendent’s testimony that it is difficult at this time to predict exactly when the juvenile will respond to rehabilitative treatment. We also note that the superintendent stated that the juvenile system has the least success with juveniles who are in constant flight and who constantly break attachments to people and places — an apt description of the juvenile involved here. Finally, we concur with the juvenile court judge’s evaluation of the superintendent’s testimony that he believed an extremely high percentage of the juveniles at MacLaren were rehabilitated at age 21. The trial court noted that if this were indeed true, it would seem that at least some MacLaren residents who had committed homicides would be discharged prior to reaching age 21. We believe it is in the best interests of the juvenile to insure that treatment continues past age 21, if necessary, in order to give him the maximum opportunity to become rehabilitated and take his place as a productive member of society.
 

 Our de novo review of the evidence indicates that the state has met its burden of proof under ORS 419.533 to support a remand of the juvenile. We are not making a choice between prison and rehabilitative treatment available only to juveniles, because the juvenile can receive such treatment regardless of whether he remains in the juvenile system or is remanded to the adult court system.
 

 Affirmed.
 

 [1]
 

 We are speaking of credibility in its broad sense.
 
 McCoy and McCoy,
 
 28 Or App 919, 562 P2d 207, 29 Or App 287, 563 P2d 738 (1977).