Argued March 23, reversed May 21, 1979

In the Matter of Don Lee Pierre, A Child,
STATE ex rel JUVENILE DEPARTMENT OF
MARION COUNTY, *Respondent,*

*v.*

PIERRE, *Appellant.*

(No. 20,762, CA 12632)

595 P2d 506

Steven Goldberg, Salem, argued the cause for appellant. With him on the brief was Salem Legal Project, Salem.

Thomas H. Denney, Assistant Attorney General, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Gillette, and Campbell, Judges.

GILLETTE, J.

## GILLETTE, J.

In this case, the juvenile court found defendant to be within its jurisdiction[1] based on the court's determination that defendant had committed acts which, if committed by an adult, would constitute the crime of disorderly conduct. ORS 166.025(1)(c). Defendant appeals, claiming that there was insufficient evidence to support the court's finding that defendant was guilty of disorderly conduct. We agree and reverse.

ORS 166.025(1)(c) provides, in pertinent part:

"(1) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof, he:

"* * * * *.

"(c) Uses abusive * * * language * * * in a public place."

In *State v. Marker,* 21 Or App 671, 536 P2d 1273 (1975), we noted that the crime of disorderly conduct includes two elements: the mental element of intent to annoy, inconvenience or alarm the public (or recklessly creating a risk thereof), and the action element, which is in this case the use of abusive language.

---

[1] ORS 419.476 provides in part:

"(1) The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city;"

The petition alleging that defendant was within the jurisdiction of the juvenile court states:

"Said child, on or about the 22nd day of February, 1978, in Marion County, did an act in violation of a Law of the State of Oregon, to wit: ORS 166.025, entitled: DISORDERLY CONDUCT, committed as follows: Said child did then and there unlawfully and recklessly create a risk of public inconvenience, annoyance and alarm by using abusive language substantially as follows: "fucking A" and "God damn it" and similar phrases repeatedly and in a loud voice, in a public place, to wit: the alleyway at 1900 High Street, NE, Salem, Oregon."

[389]

Defendant claims there is insufficient proof to establish either element. Our review is *de novo*.[2]

There is no disagreement as to the facts. Defendant was with his older brother, Stephen, when Stephen was issued a traffic citation for driving a motorcycle in the alley behind his home without an operator's license. Defendant became quite upset and, in the words of Officer Harrell, who was at the incident, "quite verbal about the fact that the police were involved with his brother." Officer Harrell asked defendant to leave the area, which defendant did. Defendant returned a short while later to retrieve his brother's motorcycle. Defendant testified that because his brother was mad, he was afraid his brother would leave the motorcycle there or throw it down and wreck it. When defendant returned, he was swearing and using the "abusive language" referred to in the juvenile court petition.

Both defendant and Officer Harrell testified that defendant was swearing because he was upset that his brother was being issued a citation.

Several children were present and watched the incident. Although one child testified that defendant used "not very nice words" to the police officer, another child testified that he had not been nor had the other children appeared to be annoyed, alarmed or bothered at all by defendant's swearing.

The trial judge made the following findings:

"THE COURT: Okay, I think everybody seems to agree the issue is the child's intent at the time he told the words. Obviously we can't look into his head to determine what his intent was. We have to determine from the observable facts. The thing is, he was told to leave. He did leave, has testfied the only reason he came back was to get the motorcycle. It was not part of his activity or part of the reason he was there.

---

[2] ORS 419.561(4); *State ex rel Juvenile Department v. Kent,* 31 Or App 1219, 572 P2d 1059 (1977).

"As far as I'm concerned from the observable facts it's my determination that he did this to inconvenience, probably more to annoy, the people in the area and the police offices.

"The question of the guise to disturb persons versus free speech, certainly he has a right to communicate to the police officer his displeasure, although he was asked to leave, and he only came back with the limited purpose of picking up the motorcycle. He made the choice of words. His choice of words were not those that were necessary to voice displeasure to the police officer. He went additionally and he went further beyond this and used words as far as I'm concerned which would disturb any member of the public *and probably for the purposes of disturbing the people including the police officers.*" (Emphasis added.)

We think it was equally probable that the child merely intended to communicate his anger to the policeman. We note, in this regard, that the child stated that such was his intent. The trial judge, in making a contrary finding with respect to intent, did not appear to be making a judgment as to the child's credibility. Rather, he referred to the "observable facts" and then retreated to his own sensibilities.

Upon de novo review, we are not satisfied that the element of intent has been established beyond a reasonable doubt.[3]

Reversed.

**THORNTON, J.,** dissenting.

From my examination of this record, I agree with the trial judge that the element of intent to cause

---

[3] Were we required to reach the question, we would have substantial doubts that defendant's communication constituted "abusive language," *i.e.,* "fighting words" as that phrase has been treated by the United States Supreme Court. *See, e.g., Chaplinsky v. New Hampshire,* 315 US 568, 62 S Ct 766, 86 L Ed 1031 (1942); *Cohen v. California,* 403 US 15, 91 S Ct 1780, 29 L Ed2d 284 (1971); *Gooding v. Wilson,* 405 US 518, 92 S Ct 1103, 31 L Ed2d 408 (1972); *Lewis v. New Orleans,* 415 US 130, 94 S Ct 970, 39 L Ed2d 214 (1974).

"public inconvenience, annoyance or alarm or recklessly causing a risk thereof" was established beyond a reasonable doubt.