Argued and submitted November 17, 1980, affirmed March 16, 1981

In the Matter of Rodney
Steven Fox, a child.

STATE ex rel JUVENILE DEPARTMENT
OF GRANT COUNTY,
*Respondent,*

*v.*

FOX,
*Appellant.*

(No. 1225, CA 16946)

625 P2d 163

Larry Schmauder, John Day, argued the cause and filed the brief for appellant.

Rudolph S. Westerband, Assistant Attorney General, Portland, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

The juvenile in this case, age 16, was taken into custody and charged with murder for the October 26, 1979, shotgun slaying of his brother in Grant County. On October 29, 1979, he was found to be within the jurisdiction of the juvenile court of Grant County pursuant to ORS 419.476(1)(a),[1] was made a ward of the court and committed to the custody of the Eastern Oregon Regional Juvenile Detention Facility in Pendleton, pursuant to ORS 419.507(1).[2]

The State requested a hearing to determine whether the juvenile should be remanded to circuit court for disposition as an adult pursuant to ORS 419.533. A psychiatric evaluation was ordered by the court. After the hearing, the juvenile court made lengthy and detailed findings of fact as required by ORS 419.533(2).

From its findings the court concluded that:

"This child suffers from deep seated emotional and mental problems as a result of which he is likely to engage in explosive violent acts and other criminal or anti-social behavior, and that correction of these defects, which are severe, to an extent which would result in the rehabilitation of the child, would at best require long term therapy, and that this is not available in the juvenile system.

---

[1] ORS 419.476(1)(a) provides:

"(1) The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city; * * * "

[2] ORS 419.507(1) provides:

"A child found to be within the jurisdiction of the court as provided in subsection (1) of ORS 419.476, may be made a ward of the court. Where a child has been found to be within its jurisdiction, and when the court determines it would be in the best interest and welfare of the child, the court may:

"(1) Place the child on probation or under protective supervision. The court may direct that the child remain in the legal custody of his parents or other person with whom he is living or may direct that the child be placed in the legal custody of some relative or some person maintaining a foster home approved by the court, or in a child care center or a youth care center authorized to accept the child. * * *"

Therefore the court concludes that retaining juvenile jurisdiction will not serve the best interests of the child because he is not amenable to rehabilitation in facilities or programs available to the juvenile court.

"It is therefore:

"Ordered that Rodney Steven Fox be remanded to a Circuit, District, Justice or Municipal Court of competent jurisdiction for disposition as an adult for the acts alleged to constitute the offense of murder alleged in the petition herein."

On his appeal from the order remanding him to adult criminal court, the juvenile contends that the evidence was insufficient to support the remand; that the trial court lacked authority to order the psychiatric evaluation; and that it erred in receiving in evidence the psychiatric report. He also alleges that the trial court erred in receiving certain hearsay testimony of a Grant County juvenile officer.

■■ The juvenile's contention that the juvenile court had no authority to order a psychiatric evaluation to aid in its determination of the juvenile's disposition on the remand hearing is without merit. ORS 3.250(2)[3]; *State ex rel Segrest v. Van Hoomissen,* 276 Or 1077, 1081, 557 P2d 661 (1976). Likewise, his claim that the court erred in admitting certain exhibits from his juvenile court file in Klamath County and the hearsay testimony of the Grant County juvenile officer is incorrect. The exhibits and testimony related to the juvenile's prior contacts with the juvenile system in Klamath County and were relevant to the disposition to be made of the child. In any event, ORS 419.500 provides in part:

---

[3] ORS 3.250(2) provides:

"As used in ORS 3.250 to 3.280, 423.310 and 423.320, unless the context requires otherwise:

"* * * * *

"(2) 'Court services' includes but is not limited to services and facilities relating to intake screening, juvenile detention, shelter care, investigations, study and recommendations on disposition of cases, probation on matters within the jurisdiction of the court under ORS 3.260, family counseling, conciliation in domestic relations, group homes, and psychological or psychiatric or medical consultation and services provided at the request of or under the direction of the court, whether performed by employes of the court, by other government agencies or by contract or other arrangement."

"(2) For the purpose of determining proper disposition of the child, testimony, reports or other material relating to the child's mental, physical and social history and prognosis may be received by the court without regard to their competency or relevancy under the rules of evidence."

We now turn to the juvenile's contention that the evidence was insufficient to support the remand. We review *de novo. State ex rel Juv. Dept. v. Kent,* 31 Or App 1219, 572 P2d 1059 (1977).

The facts in this case are not in dispute. For approximately six years prior to the incident, the juvenile and his family had had an unsettled lifestyle, moving frequently to follow the father's work and living primarily in motels. He had four prior contacts with the juvenile system, commencing in 1976, including three suspected thefts resulting in no disposition within the juvenile system and a burglary in Klamath County in July, 1979, in which the juvenile vandalized a friend's residence. As a result of the latter incident, the juvenile was made a ward of the court. However, due to the family's nomadic lifestyle and its lack of cooperation with the juvenile authorities, he received no treatment within the juvenile system.

On October 26, 1979, the juvenile and his family were residing in a motel in John Day, Oregon. The juvenile and his three brothers, Randy, Joe and Charles, had been drinking and playing cribbage. At approximately 3:00 a.m., an argument took place between the juvenile and Charles. Randy interceded and in attempting to stop the struggle, struck Charles. As Charles left the room, the juvenile picked up his loaded 12-gauge shotgun, apparently covered its muzzle with a leather jacket and fired it twice, killing Randy with the second shot.

ORS 419.533(1) specifies the factors which the juvenile court must consider in determining whether to remand a juvenile to an adult criminal court.

"(1) A child may be remanded to a circuit, district, justice or municipal court of competent jurisdiction for disposition as an adult if:

"(a) The child is at the time of the remand 16 years of age of older;

"(b) The child committed or is alleged to have committed a criminal offense or a violation of a municipal ordinance; and

"(c) The juvenile court determines that retaining jurisdiction will not serve the best interests of the child because the child is not amenable to rehabilitation in facilities or programs available to the court."

At the remand hearing there was evidence that the juvenile has an overall I.Q. of 83, and although he has completed the seventh grade, his reading, writing and mathematics skills are far below normal for his grade level. At the time of the incident he was not attending school.

A clinical psychologist employed by the Forensic Psychiatric Services of the Oregon State Hospital testified for the state. Based upon his testing and interview with the juvenile, he concluded that the juvenile is sociopathic and paranoid and as a result of his condition, tends to react violently under minimal stress. It was his opinion that the child would be unable to benefit from either individual or group therapy and that he could not be effectively treated with the programs available in the juvenile system. In any event, the psychologist testified that the success ratio in the treatment of persons with the juvenile's personality disorders was "pitifully small." It was his opinion that the juvenile's only chance for rehabilitation required his placement in an adult residential treatment program.

A psychiatrist testified on behalf of the juvenile, giving an opinion that he suffered from an acute anti-social personality. He testified that the juvenile could not benefit from therapy lasting longer than five to ten minutes at a session and required frequent short-term contact. His prognosis for the juvenile's eventual rehabilitation was not encouraging.

"Q. Do you think you are [sic] somebody, as a psychiatrist or a psychologist, could work with him and help him learn?

"A. I think he can learn that. In order for me to do something like that I would have to be in a living situation with him practically. That is not possible. There are situations in some places where that is possible at times.

"Q. Do you have an opinion as to how long this would take.

"A. We are talking about specifically his ability or how long it would take for him to be able to operate effectively in society?

"Q. Yes.

"A. I can't -- I guess my prediction is if he was not able to do it within three years he probably wouldn't be able to do it on a satisfactory level."

Viewing this evidence as a whole, we agree with the juvenile court that retaining jurisdiction would not serve the best interests of the child, because the child is not amenable to rehabilitation in the facilities and programs available within the juvenile system. The juvenile is now 17 years of age and while he is physically mature, he is emotionally "primitive." His condition has been characterized as paranoid, resentful, explosive and aggressive. He feels no need for closeness with others and, with minimal provocation, reacts violently.

The evidence was uncontradicted that the facilities within the juvenile system are not designed to treat this juvenile's disorders and that, in any event, a protracted period of treatment will be required with little hope that it will be successful. We note that even if such facilities were available, the juvenile could only be treated within the juvenile system until he reached age 21. If he can be rehabilitated, his treatment might have to extend beyond his attaining age 21. As we observed in *State ex rel Juv. Dept. v. Kent, supra,*

" * * * Where the evidence indicates that a child will need supervision beyond the age of 21 or the child will only be exposed to the juvenile system for a short period of time due to his proximity to age 21, we have upheld the propriety of a remand of the child to adult court. [Citations omitted.]" 31 Or App at 1228.

The juvenile court was correct in concluding that the state had met its burden of proof under ORS 419.533 to support the remand of this juvenile to the adult court.

Affirmed.