Argued and submitted March 19, affirmed November 3, 1993

In the Matter of
George, Joe, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

JOE GEORGE,
*Appellant.*

(9103-80956A; CA A75703)

862 P2d 531

Peter Miller argued the cause and filed the brief for appellant.

John Payne, Certified Law Student, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Thomas H. Denney, Assistant Attorney General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

The issue in this appeal is whether the juvenile court's remand of child to adult criminal court was proper under ORS 419.533. We review *de novo* and affirm.

On the night of December 8, 1991, child and a companion approached a person on a Tri-Met bus in Portland. Child, then 17 years and nine months old, brandished a knife and ordered the person to hand over his jacket. Child was subsequently arrested and charged with armed robbery. The state moved to remand child to adult criminal court. After a hearing, the juvenile court remanded child to the circuit court for disposition as an adult. Child appeals, claiming that the evidence was insufficient to support the remand order.

■ ■  ORS 419.476(1)(a) vests the juvenile court with exclusive original jurisdiction of any case involving a person who is under 18 years of age and

"[w]ho has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city[.]"

The juvenile court may "waive" its original delinquency jurisdiction by remanding, or transferring, the child to adult court if the child was 15 years or older at the time he or she allegedly committed the offense and the offense is of sufficient severity.[1] The factors used to determine whether remand is appropriate are set out in ORS 419.533(1)(d).[2] The

---

[1] ORS 419.533(1)(b) allows the child to be remanded to adult court if:

"The child * * * is alleged to have committed a criminal offense constituting murder under ORS 163.115 or any aggravated form thereof, a Class A or Class B felony or any of the following Class C felonies:

"(A)  Escape in the second degree under ORS 162.155.

"(B)  Assault in the third degree under ORS 163.165.

"(C)  Coercion under ORS 163.275(1)(a).

"(D)  Arson in the second degree under ORS 164.315.

"(E)  Robbery in the third degree under ORS 164.395."

[2] ORS 419.533(1) provides, in part:

"The juvenile court * * * may remand a child * * * for prosecution as an adult if:

"* * * * *

"(d)  The juvenile court, after considering the following criteria, determines by a preponderance of the evidence that retaining jurisdiction will not

burden is on the state to prove by a preponderance of the evidence that remand would best serve the interests of both society and child. ORS 419.533(1)(d); *State ex rel Juv. Dept. v. Geigle*, 120 Or App 120, 123, 852 P2d 225 (1993).

■■    Applying the statutory criteria, we first consider the child's amenability to treatment in the juvenile and adult court systems.[3] Child, who at the time of the remand hearing was 18 years and two months old, claims that the only evidence offered by the state to show that he could not be adequately treated in the juvenile court system is a general policy of the Multnomah County Juvenile Division not to offer rehabilitative services to juvenile offenders over the age of 18. As child's juvenile counselor explained at the remand hearing:

"Q.    [By the state] [L]et's assume that * * * the judge denies remand and [the juvenile court retains] jurisdiction of [child]. * * * [W]hat's going to happen * * * if he is left in the juvenile system?

---

serve the best interests of the child and of society and therefore is not justified:

"(A)   The amenability of the child to treatment and rehabilitation given the techniques, facilities and personnel for rehabilitation available to the juvenile court and to the criminal court which would have jurisdiction after transfer;

"(B)   The protection required by the community, given the seriousness of the offense alleged;

"(C)   The aggressive, violent, premeditated or willful manner in which the offense was alleged to have been committed;

"(D)   The previous history of the child, including:

"(i)    Prior treatment efforts and out-of-home placements; and

"(ii)   The physical, emotional and mental health of the child;

"(E)   The child's prior record of acts which would be crimes if committed by an adult;

"(F)   The gravity of the loss, damage or injury caused or attempted during the offense;

"(G)   The prosecutive merit of the case against the child; and

"(H)   The desirability of disposing of all cases in one trial if there were adult cooffenders."

[3] ORS 419.533(1)(c) provides that, in order for a child to be remanded to adult court, the state must show that

"[t]he child at the time of the alleged offense was of sufficient sophistication and maturity to appreciate the nature and quality of the conduct involved[.]"

Child concedes that he understood the nature and quality of his criminal conduct. We accept his concession.

"A. [By juvenile counselor] Essentially nothing.

"Q. Okay.

"A. Very, very minimum. Very minimal. * * * *[O]ur department's policy is that we don't work with adults.*

"Q. And [child is] an adult.

"A. And he's an adult. *We — we don't set up programs and we don't enforce programs and we don't PV [probation violation] 18-year-olds. We don't bring them back to court for PV's.*

"Q. So —

"A. So we — about all we could do — all we would recommend would be eight days in detention and discharge. But it's [sic] about it." (Emphasis supplied.)

Child argues that the juvenile division's policy cannot be a factor in deciding whether he would be responsive to the rehabilitative efforts of the juvenile system. Although we agree that the policy cannot be considered as a basis for remand,[4] we nevertheless conclude, on the basis of a thorough review of the record, that, given child's age and the techniques, facilities and personnel available to the juvenile system, child's best chance for rehabilitation is in the adult system.

■ In making that determination, we have considered numerous factors. Child's age is one such factor. *State ex rel Juv. Dept. v. Geigle, supra,* 120 Or App at 123. The closer a juvenile is to the age of 18, the greater the likelihood that we will affirm the remand order. *State v. Kent,* 31 Or App 1219, 1227, 572 P2d 1059 (1977). In general, remands of juveniles who are 17 years or older have been upheld by this court. 31 Or App at 1227. Child was 17 years and nine months old at the time of the alleged offense and he was 18 years and two months old at the time of the remand hearing. Those facts militate in favor of a remand.

---

[4] It is clear from the statutes governing juvenile court procedure that the juvenile court may continue its wardship over a child until the child reaches the age of 21. ORS 419.511(1), (2); *MacKillop v. Foster,* 68 Or App 855, 683 P2d 146 (1984). When wardship is extended by court order, the juvenile system must provide rehabilitative assistance to the child. The persons and institutions responsible for offering reformative services to juvenile offenders cannot refuse to provide those services based on a "policy" not to treat juveniles over the age of 18.

■ The amount of time that child will likely spend at a juvenile facility is also a factor to be weighed in assessing his amenability to treatment. *State ex rel Juv. Dept. v. Fox*, 51 Or App 257, 263, 625 P2d 163 (1981). As we recognized in *State v. Kent, supra*:

> "Where the evidence indicates that a child will * * * only be exposed to the juvenile system for a short time due to his proximity to age 21, we have upheld the propriety of a remand of the child to adult court." 31 Or App at 1228.

*See also State ex rel Juv. Dept. v. Geigle, supra*, 120 Or App at 123. The assistant supervisor at MacLaren Juvenile Detention Center testified that, given child's age, the nature of the crime committed and the "down-scaling" of the juvenile population,[5] he would expect child to spend "a year or less" at MacLaren. That is to be compared with the 34-36 month presumptive sentence that child would serve if he were convicted in adult court. The evidence showed that child has had extreme difficulty in school, has completed only five credits toward a high school diploma, is a gang member and has a history of alcohol and drug abuse. Although it is difficult at this time to predict precisely how long it will take child to respond to rehabilitative treatment, we are convinced that it will take longer than one year.

As an indication that he would respond favorably to the treatment programs in the juvenile system, child points to the fact that he has been voluntarily participating in Portland Impact, a youth services program, since the spring of 1991. A case manager at the Youth in Careers and Culture Project of Portland Impact testified that she has worked "very closely" with child since he first became involved with the program and has "found him to be a responsible, conscientious youth." However, child's exposure to the rehabilitative efforts of Portland Impact has produced little or no positive results. Child committed the armed robbery on December 8, 1991, after having been active in Portland Impact for nearly a year. He is also facing charges of criminal mischief for allegedly slashing several car tires earlier that same month. Additionally, the record discloses that in October, 1991, child

---

[5] The assistant supervisor testified that the maximum allowed population at MacLaren is 250 youths. As of April 30, 1992, MacLaren housed 259 youths.

was arrested for writing gang graffiti on public property and was charged with criminal mischief.

The assistant supervisor at MacLaren, child's juvenile counselor and a parole and probation officer for Multnomah County Community Corrections[6] each testified that the adult corrections system is better equipped than the juvenile system to rehabilitate an 18-year-old offender with child's background.[7] Although four of child's witnesses testified that child had begun responding to recent rehabilitative efforts and should remain in the juvenile system, we agree with the juvenile court that those witnesses did not have the experience and expertise of the state's witnesses in evaluating the needs and propensities of juvenile offenders. The juvenile court also found child's witnesses to be less credible than the state's, and we defer to the juvenile court's findings in that regard. *State ex rel Juv. Dept. v. Kent, supra,* 31 Or App at 1224. Based on all the evidence, we conclude that participation in the treatment procedures of the adult court system would provide child with the best opportunity for rehabilitation.

■ We now turn to the other criteria in ORS 419.533 (1)(d) for determining whether remand is appropriate. The

---

[6] The parole and probation officer has had extensive experience with juvenile offenders. From 1973-75, he was a group life supervisor at MacLaren; from 1975-76, he worked as a juvenile parole officer; and from 1976-81, he worked as a correctional counselor at MacLaren.

[7] The record discloses that, although both the adult and juvenile facilities offer gang intervention programs, Oregon State Correctional Institution (OSCI) — the adult facility where child would most likely be placed if he were convicted in adult court — offers an alcohol and drug therapy program specifically targeted at Native Americans. Child is a Native American. MacLaren has no culturally-based substance abuse programs. Moreover, the educational and vocational programs at MacLaren are designed to address the needs of offenders who are under the age of 18. The programs at OSCI, however, are geared toward rehabilitating offenders who are 18 or older. For instance, OSCI offers extensive training and work experience in numerous trades, and participation in certain programs can result in the offender earning an apprenticeship certificate. Due to the youthful age of the typical MacLaren resident, the vocational programs offered there are not nearly as comprehensive as those offered at OSCI. As MacLaren's assistant supervisor explained:

"We have some [vocational programs]. And in fact we've beefed them up recently. But they're not — they're not the range that [is offered at OSCI]. Nowhere near that range. And what we do is, instead of giving them a full-blown apprenticeship like might be done at OCI, we simply try to acquaint them with the basics, *because they're too young to profit from a full apprenticeship.*" (Emphasis supplied.)

seriousness of the crime and the manner in which the crime was committed are considerations. ORS 419.533(1)(d)(B), (C). Although no one was physically injured, child's crime was serious and is best characterized as having been committed in an aggressive, premeditated and wilful fashion. Those factors weigh in favor of remand.

■ Child's previous exposure and responsiveness to the treatment efforts of the juvenile system is another consideration. ORS 419.533(1)(d)(D)(i). In April, 1991, child was referred to the juvenile court for shoplifting a jacket from a vendor in downtown Portland. The juvenile court sent him to a youth services center. Child signed a contract that obligated him to participate in a "theft talk" program, to perform community service and to submit to a drug and alcohol evaluation. Child completed only the "theft talk" portion of that agreement.

■ Also weighing in favor of remand is the fact that child has a rather considerable history of delinquency. ORS 419.533(1)(d)(E). In April, 1991, he shoplifted. In October, 1991, he was caught writing gang graffiti on public property. In December, 1991, he allegedly slashed the tires of several cars. That same month, he allegedly committed the armed robbery that is the basis for this appeal. Child's conduct causes particular concern because it reflects a general pattern of escalating violence.

Although the potential for serious loss and injury existed, the actual loss caused by the armed robbery was relatively insignificant. ORS 419.533(1)(d)(F). The likelihood of the state obtaining a conviction for the armed robbery is extremely high. ORS 419.533(1)(d)(G). Also, there are no adult co-offenders and the desirability of disposing of all cases in one trial is not an issue. ORS 419.533(1)(d)(H).

Viewing the evidence as a whole, we hold that the state has established by a preponderance of the evidence that remanding child to the circuit court would be in his and society's best interests.

Affirmed.