863 P.2d 1291 (1993)
124 Or. App. 495
In the Matter of Robert Dale Reed, a Child.
STATE EX REL. JUVENILE DEPARTMENT OF MARION COUNTY, Respondent,
v.
Robert Dale REED, Appellant.
JUV 8970227; CA A77228.
Court of Appeals of Oregon.
Argued and Submitted April 16, 1993.
Decided November 17, 1993.
Reconsideration Denied January 19, 1994.
Mark Sabitt, Eugene, argued the cause for appellant. With him on the brief was Horton, Koenig & Barnes.
Youlee Y. You, Asst. Atty. Gen., argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Atty. Gen., and Virginia L. Linder, Sol. Gen.
*1292 Before ROSSMAN, P.J., and De MUNIZ and LEESON, JJ.
ROSSMAN, Presiding Judge.
Child appeals the juvenile court's order remanding him to the circuit court for prosecution as an adult. On de novo review, we affirm.
On August 12, 1992, the state filed an amended petition in juvenile court alleging that child, then 17, committed acts which, if committed by an adult, would constitute one count of intentional murder, two counts of felony murder, and one count each of first degree robbery and first degree burglary.
The allegations arose out of an incident that occurred sometime between July 15 and August 12, 1992. After attending a drive-in movie, child and a group of six youths encountered the victim, a complete stranger, at a convenience store in northeast Salem. The victim, who was visibly intoxicated, invited the youths to his apartment to join a party that he claimed was already in progress. They accepted the invitation and followed the victim to his apartment. Although it was immediately apparent that there was no party, they nevertheless went inside.
Once inside, one of the youths, Workman, began playing "mind games" with the victim. He asked the victim, who was sitting on a couch in the front room, what he would do if he found out that Workman was a homosexual. The victim responded by producing a folding knife with a three-inch blade, holding it in front of his own face and saying that he would have to ask Workman to leave. Workman walked into the kitchen, grabbed a butcher's knife, went back into the front room and said to the victim, "That's not a knife, this is a knife." He then put the knife on the floor and told the victim that he would give him until the count of three to do the same with his knife. On the count of one or two, Workman kicked the victim in the face,[1] knocking his glasses off, causing the knife to fly out of his hand[2] and sending him off the couch and onto the floor. As the victim attempted to stand, child grabbed a frying pan, swung it with both hands "like a [baseball] bat" and hit the victim in the back of the head with such force that the handle broke off. The youths then ran from the apartment. Workman took a VCR machine as he left. Some cigarettes and alcohol were taken by other youths. Child did not personally remove any items from the apartment.
As they were leaving the apartment, some of the youths claimed to have seen the victim on his knees, still alive. Other reports indicate that the victim never regained consciousness after being struck with the frying pan. One of the youths stated that, following the blow to the head with the frying pan, the victim fell to the floor and curled up in the fetal position. The victim's decomposed body was discovered in the fetal position.
The state moved to remand child to adult criminal court. After a hearing, the juvenile court granted the motion. Child appeals, arguing that the record does not support the remand order.
Under ORS 419.476(1)(a), the juvenile court is vested with exclusive original jurisdiction over all cases involving a person who is under 18 years of age and
"who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city[.]"
A person within the jurisdiction of the juvenile court under ORS 419.476(1)(a) may be remanded, or transferred, to adult criminal court for prosecution as an adult if the person was 15 years or older when he or she allegedly committed the offense and the offense is of a serious nature. See *1293 ORS 419.533(1)(a), (b).[3] ORS 419.533(1)(d) sets out the factors used to decide whether remand is appropriate.[4] It is the state's burden to establish by a preponderance of the evidence that remand would best serve the interests of both the juvenile and society. ORS 419.533(1)(d); State ex rel. Juv. Dept. v. George, 124 Or.App. 257, 862 P.2d 531 (1993); State ex rel. Juv. Dept. v. Geigle, 120 Or.App. 120, 123, 852 P.2d 225 (1993).
As a preliminary matter, child asserts that the trial court's findings are inadequate under ORS 419.533(2), because they simply recite the statutory language contained in ORS 419.533(1)(c), (d).[5] ORS *1294 419.533(2) requires the juvenile court to "make a specific, detailed, written finding of fact" to support an order of remand. In State ex rel. Juv. Dept. v. Cole, 280 Or. 173, 177, 570 P.2d 365 (1977), the Supreme Court recognized that the purpose of the statutory requirement is to ensure "that the judges actually consider the criteria which the legislature has laid down for [the transfer of juveniles to adult court.]" Here, the written remand order does more than merely restate the statutory language. See n. 5, supra. It demonstrates that the juvenile court fully considered the relevant criteria in determining whether remand was appropriate.
Applying the criteria in ORS 419.533(1)(d), we first consider child's amenability to treatment given the resources available to the juvenile and adult court systems.[6] Both child's probation officer and a court-appointed psychologist who examined child agreed that child is capable of reform. At the remand hearing, the psychologist testified that the Secure Intensive Treatment Program (SITP)[7] at MacLaren School for Boys would provide child with the best opportunity for rehabilitation and that if child did participate in that program he could be rehabilitated by the time he reached the age of 21. He also acknowledged that the SITP would be available to child whether he remained in the juvenile system or was remanded to adult court. See ORS 137.124(4); ORS 420.011(3); OAR chapter 291, division 52. An SITP counselor testified that even if child was remanded, he still would be admitted into the program based on the psychologist's recommendation. Thus, we need not be concerned with the type of treatment programs available to the juvenile and adult systems, because regardless of which court system child enters, the treatment he receives will most likely be identical until he is 21. See State v. Kent, 31 Or.App. 1219, 1227, 572 P.2d 1059 (1977).
The seriousness of the alleged offenses and the manner in which they were committed are also factors to be considered in deciding whether child should be remanded. ORS 419.533(1)(d)(B), (C). All of the crimes with which child has been charged are very serious and are most aptly described as having been committed in an aggressive, violent and willful manner. Those factors militate in favor of remand.
Child's previous exposure to the treatment efforts of the juvenile system and his emotional and mental health are other considerations. ORS 419.533(1)(d)(D)(i), (ii). As will be discussed below, child has had several previous contacts with the juvenile system. Treatment efforts have consisted of alternative programs through Matrix and the Marion County Court School, as well as referral to outpatient treatment. Child's probation officer reported that child has not availed himself of the juvenile court's rehabilitative services and has made little, if any, progress in the juvenile system. The officer's remand study says:
"All the programs utilized by the Juvenile Court have been met with passive/resistance behavior. While in Court school, [child] had poor attendance as he would often call in ill. When he was involved in Matrix the same kind of behavior occurred. Although [child] does have some medical issues, it [sic] has not prevented him from having a positive attendance record at his places of employment."
Also, the officer noted that child has repeatedly refused to follow the juvenile court's order to avoid contact with certain delinquent youths, some of whom were involved *1295 in the incident that is the subject of this appeal.
The psychologist also expressed some doubt about the prospect of child participating in and completing the SITP. He noted that, if retained in the juvenile system, child could refuse to take part in the SITP. He observed that child has given a lot of "lip service" to attempting to rehabilitate himself, that he can "put on a very good front" and that he has "taken advantage" and "pushed the limits" of the juvenile system. We generally affirm a remand order when a child has been involved in the juvenile system in the past and "either has not been rehabilitated or is presently manipulating the juvenile system to accomplish his own goals[.]" State v. Kent, supra, 31 Or.App. at 1228, 572 P.2d 1059. With regard to child's mental and emotional health, the psychologist testified that child is "emotionally unstable" and that "he's depressed, he's got psychosomatic problems,[8] he's highly anxious [and has] a low self concept."
Another fact that supports remand is that child has a considerable history of juvenile delinquency. ORS 419.476(1)(d)(E). Child was first referred to the juvenile court in 1989 for being a minor in possession of alcohol. A drug and alcohol evaluation was completed, but it contained no recommendation for treatment. In January, 1990, child was referred to the court on a petition alleging disorderly conduct for fighting with another juvenile. The incident was resolved through an informal dispositional agreement. In March and June of that same year, he received juvenile adjudications for acts constituting unauthorized use of a motor vehicle and for acts constituting recklessly endangering another person by throwing water balloons from a highway overpass onto passing vehicles. In April, 1991, child received an adjudication for acts constituting second degree burglary after breaking into Willamette University's football concession stand. Approximately four months later, he received an adjudication for acts constituting fourth degree assault after physically assaulting a witness who had told the police about his involvement in the burglary. Child received another adjudication for acts constituting second degree burglary in June, 1991, for breaking into a convenience store. In February, 1992, he received an adjudication for acts constituting theft in the first degree for using a stolen ATM card to extract money from automatic teller machines.
In the present case, the loss caused by the alleged offenses is of the most grievous nature. ORS 419.476(1)(d)(F). That the victim lost his life is obviously a fact that weighs strongly in favor of remand.
ORS 419.476(1)(d)(G) requires that we also consider the "prosecutive merit of the case against the child." Although there is conflicting evidence regarding whether the victim was alive when the youths left his apartment, we are persuaded, for purposes of this remand proceeding only, that the blow to the head with the frying pan was the cause of death. Child asserts that the use of physical force on the victim was justified, because child was acting in defense of himself and the other youths. However, child could not have reasonably believed that the victim was about to use unlawful force against him or any of his friends when he struck the victim with the frying pan. See ORS 161.209. The record discloses that child and the other youths outnumbered the victim seven to one and that the victim did not brandish the knife, lunge toward any of the youths or otherwise handle the knife in a threatening manner. More importantly, when child hit the victim, the victim was already on the floor, injured and unarmed. The psychologist testified that, in his opinion, child "panicked" and "overreacted" to the situation. After a thorough review of the record, we are convinced that the likelihood of the state obtaining a conviction on the murder charges, as well as on the robbery and burglary charges, is high.
*1296 Finally, we note that one adult and two other juveniles were charged with crimes arising out of this incident. The other juveniles have been remanded to adult court.[9] The "desirability of disposing of all cases in one trial" militates in favor of remand. ORS 419.533(1)(d)(H).
After a de novo review of the entire record, we conclude that the state has proven by a preponderance of the evidence that remanding child to the circuit court for prosecution as an adult is in his and society's best interests.
Affirmed.
NOTES
[1] The autopsy report indicates that the kick fractured the victim's jaw.
[2] Child asserts that the victim may have retained his grip on the knife after he was kicked in the face. However, child has not pointed to any evidence in the record which supports that assertion.
[3] A child may be remanded to adult criminal court if:

"The child * * * is alleged to have committed a criminal offense constituting murder under ORS 163.115 or any aggravated form thereof, a Class A or Class B felony or any of the following Class C felonies:
"(A) Escape in the second degree under ORS 162.155.
"(B) Assault in the third degree under ORS 163.165.
"(C) Coercion under ORS 163.275(1)(a).
"(D) Arson in the second degree under ORS 164.315.
"(E) Robbery in the third degree under ORS 164.395." ORS 419.533(1)(b).
[4] ORS 419.533(1) provides, in part:

"The juvenile court * * * may remand a child * * * for prosecution as an adult if:
"* * * * *
"(d) The juvenile court, after considering the following criteria, determines by a preponderance of the evidence that retaining jurisdiction will not serve the best interests of the child and of society and therefore is not justified:
"(A) The amenability of the child to treatment and rehabilitation given the techniques, facilities and personnel for rehabilitation available to the juvenile court and to the criminal court which would have jurisdiction after transfer;
"(B) The protection required by the community, given the seriousness of the offense alleged;
"(C) The aggressiveness, violent, premeditated or willful manner in which the offense was alleged to have been committed;
"(D) The previous history of the child, including:
"(i) Prior treatment efforts and out-of-home placements; and
"(ii) The physical, emotional and mental health of the child;
"(E) The child's prior record of acts which would be crimes if committed by an adult;
"(F) The gravity of the loss, damage or injury caused or attempted during the offense;
"(G) The prosecutive merit of the case against the child; and
"(H) The desirability of disposing of all cases in one trial if there were adult cooffenders."
[5] The juvenile court's written findings state, in pertinent part:

"After considering the criteria listed in ORS 419.533(1)(d)(A)-(H), the Court determines by a preponderance of the evidence that retaining jurisdiction will not serve the best interest of the child and society and therefore is not justified.
"Specifically, the court finds as follows:
"A. The child is amenable to and in need of treatment from MacLaren's secured intensive treatment program (SITP). That treatment is available to him if retained in juvenile court or if remanded.
"B. The community requires protection in this case due to the seriousness of the alleged offense and the child's continued and repeated history of association with seriously delinquent youth.
"C. The alleged offense [sic] were extremely aggressive and violent and were preceded by actions and intentions by the child and his associates to victimize, demean and ridicule the victim.
"D. Prior treatment efforts primarily consisted of 2½ years of juvenile court probation services. The child did not regularly attend or participate in court ordered educational and work programs and repeatedly violated court orders to avoid contact with certain delinquent youth, some of whom are involved in these current allegations.
"E. The child's prior criminal history includes four Class C Felonies and two Class A Misdemeanors over the last 2½ years. Four of these offenses involved one or another of the co-defendants in the current allegations. The child last appeared in court on August 6, 1992 to address criminal conduct.
"F. The pending offenses involves [sic] the most grievous loss possible, the death of the victim. Viewed in the light most favorable to the child, his conduct was intended to cause serious injury, to incapacitate the victim. The child did nothing later to summon assistance for the victim and as a result the victim's family suffered the additional emotional trauma of the victim's decomposed condition.
"G. The District Attorney indicates that the charges pending against the child have prosecutorial merit.
"H. The District Attorney desires and will attempt to consolidate these charges with the charges pending against the adult and juvenile co-defendants for the purpose of prosecuting all co-defendants in one trial."
[6] ORS 419.533(1)(c) provides that in order for a child to be remanded, the state must show that

"[t]he child at the time of the alleged offense was of sufficient sophistication and maturity to appreciate the nature and quality of the conduct involved[.]"
After a thorough review of the record, we conclude that child understood the nature and quality of his conduct. Indeed, child does not argue to the contrary.
[7] The SITP is a program at MacLaren designed to address the particular treatment needs of violent juvenile offenders. As of the date of the remand hearing, there were 21 juveniles involved in the program. Their ages ranged from 15 to 20 years.
[8] In elaborating on child's psychosomatic condition, the psychologist diagnosed child as having "kind of hypochondriacal somatic concerns" and noted that "it's very unusual for someone of [child's] age and * * * general physical health" to have this type of problem.
[9] We affirmed Workman's remand order without opinion. State ex rel. Juv. Dept. v. Workman, 121 Or.App. 686, 856 P.2d 345 (1993). His petition for review is currently pending before the Oregon Supreme Court.